[This decision has been published in *Ohio Official Reports* at 97 Ohio St.3d 303.]

THE STATE OF OHIO, APPELLEE, *v.* LOTT, APPELLANT.

[Cite as *State v. Lott*, 2002-Ohio-6625.]

*Criminal law—Aggravated murder—Death penalty—Motion to vacate death sentence denied—Stay of execution granted on August 14, 2002, is continued—Res judicata does not bar defendant's claim of mental retardation, when—Due process requires consideration of defendant's evidence of mental retardation before execution—Defendant bears burden of establishing that he is mentally retarded by a preponderance of the evidence.*

(No. 1989-0846—Submitted September 25, 2002—Decided December 11, 2002.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 54537.

ON MOTION to Vacate Death Sentence, or, in the Alternative, to Stay Execution, to Provide Assistance of Psychiatric Experts, and to Require Evidentiary Hearing.

_____

**Per Curiam.**

{¶ 1} Appellant, Gregory Lott, was convicted of the aggravated murder of John McGrath and sentenced to death. Lott appealed, and the court of appeals affirmed his conviction and death sentence. *State v. Lott* (Mar. 16, 1989), Cuyahoga App. No. 54537, 1989 WL 24927. We also affirmed Lott's conviction and death sentence. *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293.

{¶ 2} Lott's subsequent petition for postconviction relief was denied, see (Nov. 3, 1994), Cuyahoga App. Nos. 66388, 66389 and 66390, 1994 WL 615012, and we refused to accept jurisdiction of his appeal. See *State v. Lott* (1995), 71 Ohio St.3d 1491, 646 N.E.2d 467. His successive petition for postconviction relief was also denied, see Cuyahoga App. Nos. 79790, 79791 and 79792, 2002-Ohio-

2752, 2002 WL 1265579, and we declined to accept jurisdiction. *State v. Lott*, 96 Ohio St.3d 1475, 2002-Ohio-4159, 773 N.E.2d 552.

{¶ 3} The United States District Court also denied Lott's application for habeas relief in *Lott v. Coyle* (1998), 2 F.Supp.2d 961. The Sixth Circuit affirmed in (C.A.6, 2001), 261 F.3d 594, certiorari denied, *Lott v. Bagley* (2002), 534 U.S. 1147, 122 S.Ct. 1106, 151 L.Ed.2d 1001. We set Lott's execution date for August 27, 2002. *State v. Lott*, 95 Ohio St.3d 1471, 2002-Ohio-2444, 768 N.E.2d 1180.

{¶ 4} On June 20, 2002, the Supreme Court of the United States ruled that the execution of mentally retarded criminals violates the Eighth Amendment's ban on cruel and unusual punishments. *Atkins v. Virginia* (2002), 536 U.S.304, 122 S.Ct. 2242, 153 L.Ed.2d 335.

{¶ 5} On June 26, 2002, Lott's attorneys filed a motion in this court seeking to vacate his death sentence pursuant to *Atkins v. Virginia,* claiming that Lott was mentally retarded. In the alternative, Lott asked that his August 27 execution be stayed and that he be provided the assistance of psychiatric experts and an evidentiary hearing. On July 16, 2002, Lott also filed a second successive petition for postconviction relief with the trial court raising the *Atkins* issue and requesting the same relief as raised on this appeal. On July 23, 2002, the trial court abated further proceedings on Lott's petition pending a decision from this court. On August 14, 2002, we granted Lott's motion for a stay of execution. 96 Ohio St.3d 1474, 2002-Ohio-4159, 773 N.E.2d 551.

{¶ 6} On September 6, 2002, we directed that oral argument be held on the following issues: (a) the appropriate procedures to enforce the constitutional restrictions established under *Atkins,* including the procedure to be followed when a defendant such as Lott has completed postconviction proceedings, and (b) the appropriate substantive standard to be applied in adjudicating claims that a defendant in a capital case is mentally retarded. 96 Ohio St.3d 1496, 2002-Ohio-

4674, 774 N.E.2d 1220. On September 25, 2002, we heard oral argument on these issues.

{¶ 7} Lott argues that he is mentally retarded and submits test results showing that he scored a 72 on an IQ test administered in August 1986. Lott argues that an IQ of 72 places him within the mentally retarded range of intellectual functioning since there is a five-point margin of error on any IQ test score. Additionally, Lott submits five affidavits from family and friends showing personality problems and behavioral indicators of early-life trauma.

{¶ 8} Other evidence tends to refute Lott's claim. Test results introduced during the mitigation phase of Lott's trial indicated that "Lott's intelligence quotient ranged in the low average categories, with 'I.Q.' tests yielding results of 77-81, 83-91, and 87-97." *State v. Lott*, 51 Ohio St.3d at 172, 555 N.E.2d 293. Moreover, the state has submitted a sixth grade IQ test showing that Lott's IQ was in a reported range of 87-97, and a 1984 test showing a full scale IQ of 86.

{¶ 9} Whether Lott is mentally retarded is a disputed factual issue, which we believe is best resolved in the trial court. The defense should have the opportunity to present additional evidence on Lott's mental retardation before a final decision is made.

{¶ 10} Although *Atkins* barred the execution of the mentally retarded, it did not establish procedures for determining whether an individual is "mentally retarded" for purposes of escaping execution. Rather, the Supreme Court left it to the states "to develop 'appropriate ways to enforce the constitutional restrictions' on executing the mentally retarded, just as [the court] developed new safeguards to prevent the execution of the insane following the Court's ruling in *Ford v. Wainwright* [(1986), 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335]." *Hill v. Anderson* (C.A.6, 2002), 300 F.3d 679, quoting *Atkins,* 536 U.S. at ___, 122 S.Ct. 2242, 153 L.Ed.2d 335. "Ohio should have the opportunity to develop its own

procedures" for resolving *Atkins* claims. *Hill* at 682; see, also, *Murphy v. State* (Okla.Crim.App. 2002), 54 P.3d 556, 567, 2002 OK CR 32, ¶ 29.

{¶ 11} In the absence of a statutory framework to determine mental retardation, Ohio courts should observe the following substantive standards and procedural guidelines in determining whether convicted defendants facing the death penalty are mentally retarded. The standards for mental retardation set forth in this opinion, as well as the requirement that the defendant raise and prove mental retardation, shall also apply to defense claims of mental retardation raised at trial.

{¶ 12} Clinical definitions of mental retardation, cited with approval in *Atkins,* provide a standard for evaluating an individual's claim of mental retardation. Id. at fn. 3, citing definitions from the American Association of Mental Retardation and the American Psychiatric Association. These definitions require (1) significantly subaverage intellectual functioning, (2) significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction, and (3) onset before the age of 18. Most state statutes prohibiting the execution of the mentally retarded require evidence that the individual has an IQ of 70 or below. See Ky.Rev.Stat. 532.130 and 532.140; Neb.Rev.Stat. 28-105.01(2); N.M.Stat. 31-20A-2.1; N.C.Stat. 15A-2005; S.D. Codified Laws 23A-27A-26.2; Tenn.Code 39-13-203(b); and Wash.Rev.Code 10.95.030(2). While IQ tests are one of the many factors that need to be considered, they alone are not sufficient to make a final determination on this issue. *Murphy v. State*, 54 P.3d at 568, 2002 OK CR 32, at ¶29. We hold that there is a rebuttable presumption that a defendant is not mentally retarded if his or her IQ is above 70.

{¶ 13} The procedures for postconviction relief outlined in R.C. 2953.21 et seq. provide a suitable statutory framework for reviewing Lott's *Atkins* claim. See *State v. Reynolds* (1997), 79 Ohio St.3d 158, 679 N.E.2d 1131, syllabus; cf. *State v. Scott* (2001), 91 Ohio St.3d 1268, 1268-1271, 747 N.E.2d 242 (Cook, J., dissenting).

**{¶ 14}** R.C. 2953.23(A) provides that a court may not entertain a second petition or successive petitions unless "(1) [e]ither of the following applies:

**{¶ 15}** "(a) The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.

**{¶ 16}** "(b) Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right."

**{¶ 17}** Lott's *Atkins* claim satisfies the requirements of R.C. 2953.23(A)(1)(b) because the Supreme Court has recognized a new federal right applying retroactively to convicted defendants facing the death penalty. Because Lott's claim is in the nature of a postconviction relief claim filed for the first time since *Atkins* established the new standard for mental retardation, Lott's petition is more akin to a first petition than a successive petition for postconviction relief. Thus, the R.C. 2953.23(A)(2) "clear and convincing" threshold required for considering successive petitions for postconviction relief shall not apply to petitioners raising the *Atkins* issue, such as Lott. Rather, the trial court shall decide whether the petitioner is mentally retarded by using the preponderance-of-the-evidence standard.

**{¶ 18}** The three-part test defining mental retardation, as cited in *Atkins*, provides the trial court with the constitutional standard for reviewing the evidence. In considering an *Atkins* claim, the trial court shall conduct its own de novo review of the evidence in determining whether the defendant is mentally retarded. The trial court should rely on professional evaluations of Lott's mental status, and consider expert testimony, appointing experts if necessary, in deciding this matter. The trial court shall make written findings and set forth its rationale for finding the

defendant mentally retarded or not mentally retarded. We believe that these matters should be decided by the court and do not represent a jury question. In this regard, a trial court's ruling on mental retardation should be conducted in a manner comparable to a ruling on competency (i.e., the judge, not the jury, decides the issue).

{¶ 19} The state argues that res judicata bars Lott's claim. Under the doctrine of res judicata, constitutional issues cannot be considered in postconviction proceedings under R.C. 2953.21 et seq. where they have already been or could have already been litigated by the convicted defendant, while represented by counsel, either before conviction or on direct appeal. See *State v. Perry* (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104, paragraph seven of the syllabus. However, the United States Supreme Court's decision in *Atkins* has only recently erected the constitutional bar to executing the mentally retarded, and that decision would apply to any further executions in the United States.

{¶ 20} Here, Lott lacked the opportunity to fully litigate his mental retardation claim. Admittedly, he could have raised mental retardation as a mitigating factor during the penalty phase of the trial, but not as a complete bar to the death penalty. Lott also did not have *Atkins*'s guidance as to what constitutes mental retardation. Thus, under these circumstances, we hold that res judicata does not bar Lott's claim of mental retardation. Moreover, due process *now* requires consideration of Lott's evidence of mental retardation before he is executed.

{¶ 21} We hold that Lott bears the burden of establishing that he is mentally retarded by a preponderance of the evidence. Compare *State v. Scott* (2001), 92 Ohio St.3d 1, 4-5, 748 N.E.2d 11 (burden of proof is on the defense to prove by a preponderance of the evidence that the defendant is not competent to be executed). Sanity and competence are generally presumed. Thus, one who challenges the presumption of sanity or competence must bear the burden of proof to challenge that presumption. Id. at 4, 748 N.E.2d 11; R.C. 2945.37(G), 2901.05(C)(2), and

2901.01(A)(14) (placing burden on accused to prove incompetence to stand trial, to prove an affirmative defense, and to prove insanity, all by a preponderance). Similarly, the burden of going forward with the evidence of a mental state, as a mitigating factor during a capital trial, is on the accused. See R.C. 2929.03(D)(1) and 2929.04(B)(3).

{¶ 22} Placing the burden of proof on Lott does not violate constitutional principles. In *Medina v. California* (1992), 505 U.S. 437, 445-446, 112 S.Ct. 2572, 120 L.Ed.2d 353, the United States Supreme Court held that a state may presume that a defendant is competent to be tried and require him to shoulder the burden of proving his incompetence by a preponderance of the evidence. In so ruling, the court held that a state's allocation of the burden of proof in the criminal context will not be prohibited unless " 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " Id. at 445, 112 S.Ct. 2572, 120 L.Ed.2d 353, quoting *Speiser v. Randall* (1958), 357 U.S. 513, 523, 78 S.Ct. 1332, 2 L.Ed.2d 1460; see, also, *Patterson v. New York* (1977), 432 U.S. 197, 201-202, 97 S.Ct. 2319, 53 L.Ed.2d 281. After examining the historical and modern treatment of the burden of proof in competency proceedings and the requirements of fundamental fairness, the *Medina* court concluded that placing this burden on a criminal defendant does not violate due process. *Medina*, 505 U.S. at 446-449, 112 S.Ct. 2572, 120 L.Ed.2d 353.

{¶ 23} For the foregoing reasons, we deny Lott's motion to vacate the death sentence. We remand the cause to the trial court for determination of Lott's claim that he is mentally retarded. The stay of execution granted on August 14, 2002, is continued.

{¶ 24} For all other defendants who have been sentenced to death, any petition for postconviction relief specifically raising an *Atkins* claim must be filed within 180 days from the date of the judgment in this case. Petitions filed more

than 180 days after this decision must meet the statutory standards for untimely and successive petitions for postconviction relief.

**{¶ 25}** Finally, as to capital cases currently pending trial, the trial court should consider defense *Atkins* claims, and hold hearings, in accordance with the standards set out in this opinion.

So ordered.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., concurs in part and dissents in part.

_____

**COOK, J., concurring in part and dissenting in part.**

**{¶ 26}** I agree with that portion of today's majority that denies Lott's motion to vacate his death sentence, remands the cause to the trial court for a determination of Lott's claim that he is mentally retarded, and continues the stay of execution this court previously granted. I also agree with the majority's determination that Ohio's postconviction relief scheme provides the appropriate mechanism for Lott's claim.

**{¶ 27}** I disagree, however, with the majority's premature consideration of the substantive standards the trial court should apply upon remand. In previously dissenting from the decision of a majority of this court to entertain oral argument on the appropriate procedures and standards that should be involved in an *Atkins* claim brought under R.C. Chapter 2953, I stated:

**{¶ 28}** "To the extent that existing decisional law does not already provide courts with the appropriate guidance on this issue, the law ought to develop through the traditional appellate process. A trial court should first produce a decision that a court of appeals can then review, followed by possible review by this court. Instead, the majority short-circuits the process and undertakes an inquiry without a case or controversy that can only result in an advisory opinion on an issue that is

not yet ripe." *State v. Lott*, 96 Ohio St.3d 1496, 1497, 2002-Ohio-4674, 774 N.E.2d 1220 (Cook, J., dissenting).

{¶ 29} Today's majority issues such an advisory opinion. And, by requiring "all other defendants who have been sentenced to death" to file their "petition[s] for postconviction relief specifically raising an *Atkins* claim * * * within 180 days from the date of the decision in this case," the majority also introduces a new procedural hurdle into the postconviction relief scheme that simply does not exist for petitioners who fall under R.C. 2953.23(A). Lott's petition *should* fall into the category of an R.C. 2953.23 successive postconviction relief petition. But the majority decides without substantive explanation that because "Lott's petition is more akin to a first petition than a successive petition for postconviction relief," R.C. 2953.23(A)(2)'s "clear and convincing" requirement does not apply to petitioners such as Lott who raise an *Atkins* claim. The majority decides that for such individuals, a trial court should use a preponderance-of-the-evidence standard. This is confounding, especially given the majority's later incorporation of the rejected standard by stating that "[p]etitions filed more than 180 days after this decision must meet the statutory standards for untimely and successive petitions for postconviction relief." These statutory standards *include* the R.C. 2953.23(A)(2) clear-and-convincing standard. Thus, the majority's scheme contravenes legislation and calls for selective application of the relevant statutes in an inconsistent manner that can only ensure confusion regarding the meaning of today's advisory opinion.

{¶ 30} I therefore join today's majority only on the narrow grounds expressed herein.

————————————

William D. Mason, Cuyahoga County Prosecuting Attorney, and Jon W. Oebker, Assistant Prosecuting Attorney; Betty D. Montgomery, Attorney General, and James V. Canepa, Chief, Capital Crimes Section, for appellee.

David H. Bodiker, Ohio Public Defender, J. Joseph Bodine Jr., Assistant State Public Defender, and Gregory Meyers, Chief Counsel, Death Penalty Division, for appellant.

Michael Kirkman, Jane P. Perry and Ohio Legal Rights Service, for amici curiae The Arc of Ohio, Advocacy and Protective Services, Cerebral Palsy Association of Ohio, Ohio Association of County Boards of Mental Retardation and Developmental Disabilities, Developmental Disabilities Planning Council, and Ohio Legal Rights Service.

_____