The STATE of Ohio, Appellee,

v.

HUGHBANKS, Appellant.

[Cite as State v. Hughbanks, 159 Ohio App.3d 257, 2004-Ohio-6429.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–040011.

Decided Dec. 3, 2004.

Michael K. Allen, Hamilton County Prosecuting Attorney, and Paula E. Adams, Assistant Prosecuting Attorney, for appellee.

Buell & Sipe Co., L.P.A., and Dennis L. Sipe, for appellant.

HILDEBRANDT, Presiding Judge.

{¶ 1} Petitioner-appellant, Gary L. Hughbanks Jr., appeals the denial of his postconviction petition in which he sought relief from his death sentences on the ground that he was mentally retarded. On appeal, he advances six assignments of error. Upon our determination that he was entitled to a hearing on his second postconviction claim, we reverse the judgment of the common pleas court.

{¶ 2} In July 1998, a Hamilton County jury found Hughbanks guilty on two counts of aggravated murder and a single count of aggravated burglary. The trial court imposed death sentences upon the aggravated-murder verdicts. Hughbanks's convictions were upheld on direct appeal to this court, see *State v. Hughbanks* (Dec. 3, 1999), 1st Dist. No. C–980595, 1999 WL 1488933, and to the Ohio Supreme Court, see *State v. Hughbanks*, 99 Ohio St.3d 365, 2003-Ohio-4121, 792 N.E.2d 1081. We also affirmed the common pleas court's denial of Hugh-

banks's first postconviction petition, see *State v. Hughbanks,* 1st Dist. No. C–010372, 2003-Ohio-187, 2003 WL 131937, and the Supreme Court declined jurisdiction in his appeal of our decision, see *State v. Hughbanks,* 100 Ohio St.3d 1484, 2003-Ohio-5992, 798 N.E.2d 1093.

{¶ 3} On June 9, 2003, Hughbanks filed with the common pleas court a second postconviction petition. In his petition, he asserted that because he was mentally retarded, his execution would violate the proscription against cruel and unusual punishment contained in the Eighth Amendment to the United States Constitution. Hughbanks also filed motions seeking leave to conduct discovery and the funds to retain a mental-retardation expert. The common pleas court denied the petition and the motions, and Hughbanks appealed.

# I

{¶ 4} The gravamen of Hughbanks's second postconviction petition is his assertion in his second claim for relief that his mental retardation constituted an absolute bar to the imposition of the death penalty. Thus, we address first his fifth assignment of error, in which he contends that the common pleas court erred when it denied his second postconviction claim without a hearing. This contention is well taken.

{¶ 5} On June 20, 2002, the United States Supreme Court ruled in *Atkins v. Virginia* (2002), 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335, that executing a mentally retarded person violates the Eighth Amendment's proscription against cruel and unusual punishment. On December 11, 2002, the Supreme Court of Ohio in *State v. Lott,* 97 Ohio St.3d 303, 2002-Ohio-6625, 779 N.E.2d 1011, established procedures and substantive standards for adjudicating a death-eligible defendant's claim that he is, in the words of the United States Supreme Court in *Atkins,* "so impaired as to fall within the range of mentally retarded offenders" against whose execution there has emerged "a national consensus." See *Atkins v. Virginia,* 536 U.S. at 317, 122 S.Ct. 2242, 153 L.Ed.2d 335.

{¶ 6} The Supreme Court in *Lott* ruled that a defendant asserting an *Atkins* claim must prove by a preponderance of the evidence (1) that he suffers from "significantly subaverage intellectual functioning," (2) that he has experienced "significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction," and (3) that such manifestations of mental retardation arose "before the age of 18." *State v. Lott,* supra, 97 Ohio St.3d 303, 2002-Ohio-6625, 779 N.E.2d 1011, at ¶ 12. The *Lott* court committed to the common pleas court, rather than the jury, the determination of whether a defendant is mentally retarded. The Supreme Court contemplated that the common pleas court would conduct its mental-retardation inquiry "in a manner comparable to" an inquiry into a question of competency and that, in making its

decision, it would "rely on professional evaluations of [the defendant's] mental status, and consider expert testimony, appointing experts if necessary." The Supreme Court held that an IQ score above 70 gives rise to "a rebuttable presumption that a defendant [is] not mentally retarded." And the Supreme Court instructed the common pleas court to memorialize the bases for its decision in the form of written findings. Id. at ¶ 12, 18, and 21; see, also, *State v. Carter*, 157 Ohio App.3d 689, 2004-Ohio-3372, 813 N.E.2d 78, at ¶ 11, 12, and 13.

{¶ 7} We note preliminarily that Hughbanks was sentenced to death before the decision in *Atkins*. Therefore, he has not been afforded a full and fair opportunity to litigate his claim of mental retardation as a complete bar to his death sentences, and "due process now requires consideration of [his] evidence of mental retardation before he is executed." (Emphasis sic.) *State v. Lott*, 97 Ohio St.3d 303, 2002-Ohio-6625, 779 N.E.2d 1011, at ¶ 20.

{¶ 8} Hughbanks presented his *Atkins* claim in a postconviction petition filed within 180 days of the date of the Supreme Court's decision in *Lott*. Therefore, the common pleas court had jurisdiction to entertain the claim under R.C. 2953.21. See *State v. Lott*, id. at ¶ 13 and 24.

{¶ 9} R.C. 2953.21(A)(1) requires a postconviction petitioner to demonstrate a denial or infringement of his rights in the proceedings resulting in his conviction that rendered the conviction void or voidable under the Ohio Constitution or the United States Constitution. In advancing such a claim, the petitioner bears the initial burden of demonstrating, through the petition and any supporting affidavits and the files and records of the case, "substantive grounds for relief." R.C. 2953.21(C).

{¶ 10} A postconviction claim is subject to dismissal without a hearing if the petitioner has failed to submit with his petition evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief. See id.; *State v. Pankey* (1981), 68 Ohio St.2d 58, 22 O.O.3d 262, 428 N.E.2d 413; *State v. Jackson* (1980), 64 Ohio St.2d 107, 18 O.O.3d 348, 413 N.E.2d 819. Conversely, "the court must proceed to a prompt hearing on the issues" if "the petition and the files and records of the case show the petitioner is * * * entitled to relief." R.C. 2953.21(E).

{¶ 11} During the penalty phase of his trial, Hughbanks offered in mitigation evidence of his intellectual functioning and his adaptive skills.[1] He adduced both

---

1. R.C. 2929.04(B)(3) and (B)(7) require a court or a jury to weigh against the aggravating factors the mitigating factor of "[w]hether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality

expert and lay testimony demonstrating that he had suffered since his early teens from mental illness and that he lacked the personal skills to cope with, or to function responsibly with respect to, his family, education, employment, or finances. But an intelligence test, conducted at the direction of a psychologist appointed to evaluate Hughbanks for trial, showed that he had a full-scale IQ of 82, leading the Ohio Supreme Court, in conducting its independent evaluation of the aggravating and mitigating factors, to conclude that the record of the penalty-phase proceedings contained "no evidence that Hughbanks [was] mentally retarded." *State v. Hughbanks,* 99 Ohio St.3d 365, 2003-Ohio-4121, 792 N.E.2d 1081, at ¶ 141.

{¶ 12} Certainly, the evidence presented during the penalty phase of Hughbanks's trial could inform the common pleas court's postconviction inquiry into his *Atkins* claim. But the penalty-phase evidence was offered to probe the issue of whether his mental illness mitigated against the imposition of the death penalty. It was not intended to probe the issue, posed by his *Atkins* claim, of whether he fell within the range of mentally retarded offenders whose execution the Eighth Amendment prohibited. See *State v. Carter,* 157 Ohio App.3d 689, 813 N.E.2d 78, 2004-Ohio-3372, at ¶ 22.

{¶ 13} Moreover, while an IQ-test score above 70 gives rise to a presumption that a capital defendant does not fall into that category of offenders, such a score provides merely one measure of intellectual functioning that "alone [is] not sufficient to make a final determination on [the mental-retardation] issue." See *State v. Lott,* 97 Ohio St.3d 303, 2002-Ohio-6625, 779 N.E.2d 1011, at ¶ 12. And Hughbanks has yet to be afforded the opportunity to rebut the presumption or to offer evidence of other relevant measures of his intellectual functioning. See *State v. Carter,* 157 Ohio App.3d 689, 2004-Ohio-3372, 813 N.E.2d 78, at ¶ 12.

{¶ 14} In support of his *Atkins* claim, Hughbanks offered Social Security Administration records generated in 1995, when he was 29 years old. These records showed that Hughbanks had been deemed eligible for social security benefits based upon a diagnosis of, among other things, "Mental Retardation" as evidenced by his "Borderline Intellectual Functioning." This diagnosis emerged from a clinical interview and testing conducted by a psychologist. The interview disclosed Hughbanks's long-term social, substance-abuse, and employment problems, and the testing yielded a full-scale IQ score of 73.

{¶ 15} Hughbanks's postconviction petition, with its supporting evidentiary material and the files and records of the case, presented factual issues as to whether he had, since before the age of 18, suffered from significantly subaverage

---

of his conduct or to conform his conduct to the requirements of the law" and "[a]ny other factors that are relevant to the issue of whether the offender should be sentenced to death."

intellectual functioning and significant limitations in two or more adaptive skills so that he could not, consistent with the Eighth Amendment, be executed. Because he sustained his burden of demonstrating substantive grounds for relief, he was entitled to a hearing on his second postconviction claim. We therefore hold that the common pleas court erred when it denied Hughbanks's second postconviction claim without a hearing. Accordingly, we sustain the fifth assignment of error.

## II

{¶ 16} In his first assignment of error, Hughbanks assails the denial of his motion for leave to conduct discovery. His second assignment of error, which he directs against the denial of his motion for funds to retain a mental-retardation expert, also presents, in essence, a challenge to the common pleas court's failure to permit discovery. We hold that Hughbanks was entitled to discovery to develop his second postconviction claim, including the experts necessary to aid in that discovery and to assist in presenting the claim, because he demonstrated substantive grounds for relief. See *State v. Issa* (Dec. 21, 2001), 1st Dist. No. C–000793, 2001 WL 1635592. We therefore sustain the first and second assignments of error.

## III

{¶ 17} In his third assignment of error, Hughbanks contends that the common pleas court denied him his due-process, equal-protection, and Eighth Amendment rights when it presumed that he was not mentally retarded based on his IQ score of over 70. We do not reach the merits of this challenge, because our disposition of the fifth assignment of error renders it moot. See App.R. 12(A)(1)(c); see, also, *State v. Carter*, supra, 157 Ohio App.3d 689, 2004-Ohio-3372, 813 N.E.2d 78, at ¶ 27.

## IV

{¶ 18} In his first and third postconviction claims, Hughbanks contended that he was entitled to be sentenced to life in prison or to be resentenced by a jury, because the Sixth, Eighth, and Fourteenth Amendments required a jury determination of the mental-retardation issue. In his fourth and sixth assignments of error, Hughbanks challenges the denial of his first and third postconviction claims. These challenges are untenable.

{¶ 19} As we noted above, the Ohio Supreme Court in *State v. Lott* committed to the common pleas court, rather than a jury, the determination of whether a death-eligible defendant falls within the range of mentally retarded offenders whose execution the Eighth Amendment prohibits. See *State v. Lott*, supra, 97

Ohio St.3d 303, 2002-Ohio-6625, 779 N.E.2d 1011, at ¶ 18. We therefore hold that the common pleas court properly denied Hughbanks's first and third postconviction claims. Accordingly, we overrule his fourth and sixth assignments of error.

## V

{¶ 20} We affirm the judgment of the common pleas court to the extent that it denied Hughbanks's first and third postconviction claims. But we reverse the judgment to the extent that it denied his second postconviction claim without a hearing and without affording him discovery, and we remand this case for further proceedings consistent with the law and this decision.

Judgment affirmed in part
and reversed in part,
and cause remanded.

GORMAN and SUNDERMANN, JJ., concur.