{¶ 122} While I express no opinion as to petitioners' guilt or innocence, I believe the trial court's judgment cannot be reversed given the limited scope of our review. In its judgment entry, the trial court stated:
 {¶ 123} "[T]he Court finds that the evidence itemized herein dehors the record * * * is material * * *; that for failing to use evidence in the trials, counsel for each of the Petitioners was ineffective, that had such evidence been disclosed to the juries that decided these cases, there is a reasonable probability that the result of the proceedings would have been different. Certainly the juries should have been given this evidence for their consideration for their verdicts to be worth[y] of confidence. Without the benefit of such evidence this Court finds thatthe verdicts rendered are not worthy of confidence." (Emphasis added.)
 {¶ 124} "The appellate standard of review for post-conviction relief under R.C. 2953.08 is de novo."[6] However, "when a trial court rules on a petition for postconviction relief after a hearing, an appellate court will give deference to the trial court's findings of fact."[7]
 {¶ 125} In a hearing on a petition for postconviction relief, the trial court acts as the trier of fact.[8] As such, the trial court is primarily responsible for determining the weight to be given to the evidence and assessing the credibility of the witnesses.[9] In addition, the Supreme Court of Ohio has recently held that disputed factual issues in a postconviction relief hearing are best left to the trial court.[10]
 {¶ 126} At the postconviction relief hearing, the trial court heard eight days of testimony. Thereafter, having the benefit of evaluating the witnesses' credibility, the trial court weighed the evidence and determined that the petitioners were denied a fair trial and entitled to postconviction relief. Although the majority individually attacks the trial court's findings on several different factual issues, I believe the critical issue in this matter is the alleged "blood" evidence. I believe this issue, standing alone, supports an affirmation of the trial court's judgments.
 {¶ 127} The petitioners' defense was innocence. No reasonable trial strategy would support the omission of the 1990 SERI Report. Even a cursory review of the SERI report would lead a reasonable attorney to contact Brian Wraxall, the Serologist who authored the report. After the convictions, the report came to light and Wraxall was contacted. In a 1996 affidavit, he stated "[t]he best interpretation of [Dale Laux's] results is that the presumptive tests are false positives, and the human protein originated from some human body fluid that does not contain DNA or serum proteins. The body fluid that best fits this scenario is perspiration." In his 2001 deposition, Wraxall testified that had he been contacted by the defense and informed about Laux's tests, he would have testified the same way during the 1990 trials. At the postconviction hearing, defense counsel for both petitioners testified that if they had Wraxall's report, they would have contacted Wraxall as their professional obligation would demand.
 {¶ 128} According to the majority, defense counsels' cross-examination of Laux sufficed to attack the credibility of the state's "blood" evidence such that failing to introduce the SERI Report had no bearing on the outcome. I disagree. Cross-examining Laux is not the same as introducing the SERI Report. Irrespective of the skill with which defense counsel cross-examined Laux, the juries did not hear evidence that the substance in the bed-liner WAS NOT BLOOD.
 {¶ 129} The majority additionally notes that Wraxall's 1996 affidavit and 2001 testimony are outside the scope of our review as they were not in existence at the time of petitioners' trials. Again, I disagree. The functional evidentiary merit of Wraxall's interpretation was tacit in the report. Had defense counsel the luxury of presenting the report to the juries, Wraxall's conclusions would have been revealed to the juries. Without this evidence, the juries' verdicts are unreliable.
 {¶ 130} Finally, the majority is correct that the 1990 SERI Report speaks of the stains as "blood." However, this label is irrelevant in relation to the substantive conclusions set forth in the report. These conclusions, in conjunction with Wraxall's affidavit and deposition testimony, make it clear that the nominal reference to the substance as "blood" was less an attempt to categorize the stain and more a shorthand way of referring to the sample. After all, a primary reason for conducting serological tests on an unidentified substance is to determine the substance's nature. Although the prosecution believed the substance found in the truck was Connie Nardi's blood, such expectations do not transform the substance into blood. It was not.
 {¶ 131} The SERI Report, had it been introduced, would have impugned the credibility of Dale Laux's testimony and undermined the state's blood evidence. Without the SERI Report, defense counsels' cross-examination of Laux was essentially restricted to Laux's report and analysis. If defense counsel had the report, they would have been on notice that Laux's characterization of the "blood" evidence was wholly incorrect. Without the SERI Report, the juries' verdicts are not worthy of confidence.
 {¶ 132} The purpose of postconviction relief is to correct the denial of a defendant's constitutional rights.[11] The Sixth Amendment
"confers a `fundamental right' on criminal defendants, one that `assures the fairness, and thus the legitimacy, of our adversary process.'"[12]
Fairness and due process would dictate that the juries were entitled to hear the exculpatory characterization of the "blood" evidence set forth in the SERI Report. Defense counsels' failure to investigate the prosecutor's file and utilize the SERI Report was not reasonable professional judgment. Without question, the SERI Report was material to petitioners' defense.
 {¶ 133} The trial court's factual findings were supported by competent, credible evidence. Therefore, the trial court's decision should not be disturbed. For the foregoing reasons, I respectfully dissent.
[6] State v. Braden, 10th Dist. No. 02AP-954, 2003-Ohio-2949, at ¶ 13, citing State v. Davis (1999), 133 Ohio App.3d 511, 515.
[7] Id., citing State v. Jolly (June 24, 1993), 8th Dist. Nos. 62380 and 63212, 1993 Ohio App. LEXIS 3210.
[8] State v. Salter (Feb. 4, 2000), 6th Dist. No. L-99-1050,2000 WL 125809, at *4, citing State v. Williams (Dec. 24, 1998), 11th Dist. No. 97-T-0148, 1998 WL 964576, at *5.
[9] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[10] State v. Lott, 97 Ohio St.3d 303, 2002-Ohio-6625, at ¶ 9.
[11] State ex rel. Turpin v. Court of Common Pleas (1966),8 Ohio St.2d 1.
[12] Withrow v. Williams (1993), 507 U.S. 680, 688, quoting Kimmelmanv. Morrison (1986), 477 U.S. 365, 374.