OPINION
{¶ 1} In this delayed appeal, defendant-appellant, Robert McColgan, appeals the judgment of the Franklin County Court of Common Pleas convicting him of two counts of rape. For the reasons that follow, we affirm the trial court's judgment.
 {¶ 2} By indictment filed June 27, 2002, defendant was charged with six counts of rape in violation of R.C. 2907.02, two counts of sexual battery in violation of R.C. 2907.03, and two counts of gross sexual imposition in violation of R.C. 2907.05. The issue of defendant's competence to stand trial was raised, and, after a hearing on the matter, the trial court found defendant to be competent. Thereafter, as a result of a plea bargain, defendant pled guilty to two counts of rape. The trial court accepted defendant's plea, found him guilty, and, pursuant to a joint recommendation of defense counsel and plaintiff-appellee, State of Ohio, sentenced defendant to six years on each count, to be served consecutively, for a total sentence of 12 years. Upon application of the state, the trial court entered a nolle prosequi as to the remaining counts.
 {¶ 3} On appeal, defendant asserts a single assignment of error, as follows:
The trial court erred in failing to find that appellant was not competent to stand trial on criminal charges.
 {¶ 4} Defendant's assignment of error argues the trial court should have determined that he was not competent to stand trial. The United States Supreme Court and the Supreme Court of Ohio have held that fundamental principles of fairness and due process demand that a criminal defendant who is not legally competent may not be tried or convicted of a crime. See Pate v. Robinson (1966), 383 U.S. 375, 86 S. Ct. 836; State v.Berry (1995), 72 Ohio St.3d 354, 359. The constitutional test for determining whether a criminal defendant is competent to stand trial is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him." Id., quoting Dusky v. United States (1960),362 U.S. 402, 80 S.Ct. 788; see, also, State v. Williams (1997),116 Ohio App.3d 237, 241-242.
 {¶ 5} Ohio has codified this standard in R.C. 2945.37(G), which provides that a defendant is presumed to be competent unless it is proved by a preponderance of the evidence at a hearing that "because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense." See, also, Statev. Vrabel, 99 Ohio St.3d 184, 2003-Ohio-3193, at ¶ 16. As competence is presumed, the burden of proving incompetence by a preponderance of the evidence falls upon the defendant. State v. Lott, 97 Ohio St.3d 303,2002-Ohio-6625, at ¶ 21; State v. Stanley (1997), 121 Ohio App.3d 673,685; State v. Williams (1986), 23 Ohio St.3d 16, 19.
 {¶ 6} Further, pertinent to this case, the standard for determining competence to enter a guilty plea is the same as that for determining competence to stand trial. State v. Mink, 101 Ohio St.3d 350,2004-Ohio-1580, at ¶ 57, citing Godinez v. Moran (1993), 509 U.S. 389,399, 113 S.Ct. 2680; see, also, State v. Bolin (1998), 128 Ohio App.3d 58,61-62. An appellate court will not disturb a competency determination if there was some "reliable, credible evidence supporting the trial court's conclusion that [the defendant] understood the nature and objective of the proceedings against him." Williams, supra, at 19. Further, "the adequacy of the data relied upon by the expert who examined the [defendant] is a question for the trier of fact." Id.
 {¶ 7} On August 6, 2002, the trial court, pursuant to R.C. 2945.371(A), ordered defendant to submit to an evaluation by an examiner of the Netcare Forensic Psychiatry Center to determine if he was competent to stand trial. Pursuant to that order, defendant was evaluated on October 4, 2002, by clinical psychologist, Colin Gordon, Ph.D. In a written report filed with the court on October 15, 2002, he concluded that defendant was not mentally retarded and did not suffer from a serious mental illness. He further opined that defendant was capable of understanding the nature and objective of the proceedings against him and could assist in his own defense. The parties stipulated to Dr. Gordon's report, and on October 17, 2002, the court found defendant competent to stand trial.
 {¶ 8} On April 23, 2003, defendant filed a motion to suppress his statements to the police, claiming that he was not competent to waive the rights guaranteed him by Miranda v. Arizona (1966), 384 U.S. 436,86 S.Ct. 1602. On May 19, 2003, the trial court held a hearing on defendant's motion to suppress at which clinical psychologist, Karla Klein Voyten, Ph.D., testified on defendant's behalf. In addition, Dr Voyten's written report, prepared on April 23, 2003, was admitted into evidence.
 {¶ 9} Dr. Voyten testified that defendant had an IQ of 67, which placed him in the mild range of mental retardation. She further testified that defendant's IQ had declined approximately seven points since a previous assessment conducted in 2000. She emphasized, however, that without additional documented adaptive deficits, defendant could not be diagnosed as mentally retarded. Dr. Voyten also averred that defendant read at a fourth grade level and had difficulty comprehending verbal information. In addition, she testified that defendant suffered from organic brain damage likely arising in utero or during the birth process.
 {¶ 10} Dr. Voyten stated that she evaluated defendant's competence in two separate areas — competence to stand trial and competence to waiveMiranda rights. As to defendant's competence to waive Miranda rights, Dr. Voyten concluded that defendant did not intelligently waive those rights. With regard to his competence to stand trial, Dr. Voyten opined that defendant was mentally ill, suffered from organic brain impairment constituting a mental defect, and was incapable of assisting in his own defense.
 {¶ 11} By decision and entry filed June 12, 2003, the trial court denied defendant's motion to suppress. Because the issue of defendant's competence to stand trial was again raised through Dr. Voyten's testimony, the trial court ordered defendant to again submit to an evaluation by an examiner of the Netcare Forensic Psychiatry Center to determine if he was competent to stand trial.
 {¶ 12} Pursuant to that order, defendant was evaluated on August 11, 2003, by clinical psychologist, Kevin J. Edwards, Ph.D. On September 16, 2003, Dr. Edwards submitted a written report to the trial court. Therein, Dr. Edwards reported that defendant graduated from high school through special education classes. He worked steadily for the same company for 28 years. He was declared permanently disabled as the result of an accident in 2001; thereafter, he received SSI benefits and earned money delivering advertising flyers. At the time of the evaluation, defendant had been married to his third wife for 17 years. His three marriages produced four children. Defendant had no history of psychiatric treatment or psychotherapy.
 {¶ 13} Dr. Edwards further noted that defendant reportedly experienced birth trauma which led to neurological damage and concomitant development delays. Dr. Edwards also reported that psychological testing over time revealed that defendant functions in the borderline to mild mental retardation range of intelligence, and that his cognitive abilities declined due to organic impairment likely due to the birth trauma and/or head injuries suffered as an adult.
 {¶ 14} In a section of the report discussing defendant's understanding of his legal situation, Dr. Edwards reported that defendant substantially identified the charges against him and understood them to be serious felonies. He further noted that defendant understood the consequences of and appreciated the differences between pleading guilty and not guilty, and further understood the advantages and disadvantages of plea bargaining. He further noted that defendant was cognizant of the applicable sentencing ranges and understood the difference between consecutive and concurrent sentences. Dr. Edwards further averred that defendant successfully answered questions regarding courtroom personnel, court procedures, and his capacity to assist his attorney. In addition, Dr. Edwards reported that defendant had met with his attorney several times and indicated that he trusted him.
 {¶ 15} In his clinical formulation, Dr. Edwards noted that defendant was able to discuss the concept of his charges and trial processes and required explanation or clarification from Dr. Edwards in only a few areas. Dr. Edwards further noted that although defendant did not spontaneously use accurate terms for legal concepts and court processes, he understood their essence and successfully repeated those presented to him. Dr. Edwards also stated that defendant displayed an appreciation of the charges against him and the possible penalties, and that he understood the process of a plea agreement, and, in fact, reported that he had declined three offers. As well, defendant was aware of the likely outcome of the proceedings and stated a preference for concurrent sentencing. Dr. Edwards also averred that defendant was capable of assisting in the planning of a legal strategy in close collaboration with his attorney, and had the capacity and verbalized willingness to disclose information to his counsel as well as follow his advice. Dr. Edwards also noted that defendant understood the respective roles of court personnel. Dr. Edwards further averred that defendant's capacity to testify on his own behalf could be limited due to his slow, concrete thought processes and his inability to cognitively manipulate complex tasks.
 {¶ 16} In his forensic conclusion, Dr. Edwards opined that defendant was not mentally retarded, but met the criteria for a severe mental illness. He further opined that although defendant was able to present and comprehend single and/or very simple concepts, he was completely unable to grasp more complex interactions. By way of example, Dr. Edwards noted that although defendant appeared to understand and could describe the individual components involved in the trial process, he had difficulty making the connection between those components. He further opined that given defendant's measured cognitive deficits, particularly his memory deficits and his inability to engage in abstract thinking and to mentally integrate complex tasks and information, defendant was not capable of understanding the legal proceedings against him and was not capable of assisting in his defense. Dr. Edwards further opined that because defendant's deficits were organic and chronic and would probably worsen with time, it was unlikely that defendant would be restored to competence prior to trial.
 {¶ 17} A hearing was held on the matter on September 25 and 26, 2003. Dr. Edwards was the sole witness at the hearing. His report was admitted into evidence and he reiterated the findings contained in his report. When asked to explain the basis for his conclusion that defendant was not competent to stand trial, Dr. Edwards responded:
As I tried to outline here, if that basic superficial understanding is enough, so be it, but Mr. McColgan is not able to understand multiple concepts put together in one place, particularly under pressure when he's in an adversarial role or environment. I think he would become very confused. His capacity to assist his attorney would be lessened with greater complexity, and I wanted to provide that information to the Court.
(Tr. Sept. 25, 2003 hearing, at 16-17).
 {¶ 18} In response to the prosecution's request that he clarify his opinion as to whether defendant was capable of understanding the nature of the proceedings against him or of assisting in his own defense, Dr. Edwards replied: "I don't know that I can make that decision. If, as I said, on the complexity matters, no, he cannot. If it's a basic superficial understanding of individual areas, yes, he can." Id. at 17. Following the hearing, the trial court, by entry filed October 24, 2003, found defendant competent to stand trial.
 {¶ 19} On appeal, defendant asserts that the trial court's determination of competence was based upon Dr. Gordon's report and that reliance on that report was improper because at the time Dr. Gordon conducted his evaluation, he did not have sufficient information available to him to make an accurate psychological assessment of defendant's mental illness. Defendant also contends the trial court ignored evidence presented through the reports and testimony of Drs. Voyten and Edwards that defendant suffered from mental illness rendering him incompetent to stand trial.
 {¶ 20} Initially, we note that the record belies defendant's claim that the trial court's competency finding was based upon Dr. Gordon's conclusions contained in the report he submitted to the court on October 15, 2002, and to which the parties stipulated. The trial court clearly states in its October 24, 2003 decision that its competency finding was based upon the evidence presented through Dr. Edwards' report. The court references Dr. Gordon's report only in its historical recitation of the proceedings.
 {¶ 21} Further, the trial court did not abuse its discretion in not accepting the findings contained in the reports and testimony of Drs. Voyten and Edwards regarding defendant's alleged mental illness. When a trial court is provided with expert opinions regarding a defendant's competence, the issue becomes one of credibility. Under these circumstances, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. A reviewing court affords great deference to the trial court's assessment of witness credibility because "the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections and use those observations in weighing the credibility of the proffered testimony." Season's Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. As such, the trial court was not required to accept Dr. Voyten's and Dr. Edwards' findings regarding defendant's alleged mental illness.
 {¶ 22} Moreover, even if the trial court had accepted the experts' findings, such acknowledgment would not necessarily have affected its decision on defendant's competence to stand trial. As the Supreme Court of Ohio has stated, "the term `mental illness' does not necessarily equate with the definition of legal incompetency. Legal incompetence has a specific meaning [as set forth in R.C. 2945.37(G)]." Berry, supra, at 362. Thus, a person may suffer from a mental disability or illness and still be capable of understanding the proceedings against him and assisting in his own defense. State v. Bock (1986), 28 Ohio St.3d 108, 110.
 {¶ 23} The issue before the court was not whether defendant was mentally ill or to what extent; rather, the court was required to determine whether defendant had the ability to understand the nature and objective of the proceedings against him and to assist in his defense. To that end, the trial court discussed at length the findings contained in Dr. Edwards' report related to that criterion. The court noted that despite these findings, Dr. Edwards ultimately concluded that defendant was not competent to stand trial because he might have difficulty following complex legal concepts. In rejecting that conclusion, the court noted that Dr. Edwards had failed to recognize that virtually all defendants, save for attorney-defendants, might have difficulty following complex legal matters. The trial court determined that Dr. Edwards had, in essence, imposed an additional criteria not required by the statute. The trial court ultimately held, based upon the findings, rather than the conclusion, contained in Dr. Edwards' report, that defendant understood the nature and objective of the proceedings against him and was capable of assisting in his own defense.
 {¶ 24} As noted by the state, a similar issue was raised in State v.Wenzler, Greene App. No. 2003-CA-16, 2004-Ohio-1811. In that case, two expert witnesses evaluated Wenzler and reached opposing conclusions regarding his competence to stand trial. One of the experts noted that Wenzler graduated from high school through special education classes, held a job, maintained a driver's license, helped his mother around the house, paid his own bills and maintained a bank account. This expert further noted that although Wenzler suffered from mild mental retardation, he had the basic factual knowledge of the charges, the possible pleas, and potential outcomes and that he was able to assist his attorney in his defense; accordingly, the examiner opined that Wenzler was competent to stand trial.
 {¶ 25} In contrast, the other expert testified that Wenzler was not competent to stand trial because, although he had a rudimentary understanding of the legal process, he was unable to discuss possible legal strategies and defense. The appellate court concurred in the trial court's finding that the second expert had employed an artificially high legal standard in forming his opinion. Id. at ¶ 7. "As the trial court stated, `[c]ompetency does not require a defendant to evaluate and discuss available legal defenses or to opine as to how his attorney should conduct his defense.'" Id. Accordingly, the court found no fault in the trial court's rejection of the second expert's opinion.
 {¶ 26} As in Wenzler, the trial court in the instant case determined that Dr. Edwards employed an artificially high standard in concluding that defendant was not competent to stand trial. We agree. Dr. Edwards' conclusion was based upon his assessment that defendant was incapable of fully comprehending complex legal issues. As the trial court noted, however, the vast majority of criminal defendants do not fully understand the legal process and that is precisely the reason they are afforded legal counsel at state expense. Dr. Edwards' report included findings that defendant displayed an appreciation of the charges against him and the possible penalties associated with those charges, and that he was capable of assisting in the planning of a legal strategy in close collaboration with his attorney. That is all that is required by R.C.2945.37(G). We find no error in the trial court's decision to rely upon the findings contained in Dr. Edwards' report rather than upon his conclusion.
 {¶ 27} In short, we have fully reviewed the record and conclude that the trial court's competency finding was supported by competent, credible evidence; thus, the trial court did not err in finding defendant competent to stand trial. Accordingly, defendant's assignment of error is without merit.
 {¶ 28} For the foregoing reasons, defendant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
 Bryant and Klatt, JJ., concur.
Deshler, j., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.