OPINION
{¶ 1} Appellant, Charles L. Lorraine ("Lorraine"), appeals the judgment of the Trumbull County Court of Common Pleas, dismissing Lorraine's petition for postconviction relief, and granting the state's motion to dismiss.
 {¶ 2} Lorraine was convicted of four counts of aggravated murder and two counts of aggravated burglary on November 19, 1986. He was subsequently sentenced to death on December 9, 1986. This court affirmed his convictions and death sentence on August 10, 1990.[1] The Supreme Court of Ohio affirmed the conviction and sentence on June 16, 1993.[2]
An initial petition for postconviction relief was denied in the trial court and, subsequently, affirmed by this court on February 23, 1996 and September 1, 2000.[3] The Supreme Court of Ohio subsequently denied certiorari.[4] Lorraine raised his postconviction issues in the United States District Court for the Northern District of Ohio in his petition for a writ of habeas corpus. That court granted habeas relief and set aside Lorraine's death sentence.[5] The Sixth Circuit Court of Appeals reversed that ruling and reinstated the death sentence.[6] Certiorari was denied by the United States Supreme Court.[7]
 {¶ 3} In June 2002, the United States Supreme Court issued its seminal decision in Atkins v. Virginia, holding that the execution of mentally retarded persons violates the Eighth Amendment's safeguard against cruel and unusual punishment.[8] The Atkins Court left it to the states to determine the precise standards and procedures to be applied, in light of the Atkins holding, in making a determination as to whether a capital defendant is mentally retarded.
 {¶ 4} On December 11, 2002, the Supreme Court of Ohio set forth the procedures for enforcing the constitutional proscription against executing the mentally retarded in State v. Lott.[9] The court stated that the procedure for postconviction relief provided for in R.C. 2953.21 et. seq. was adequate to address an Atkins claim.[10] The Lott Court also noted that the rights enunciated in Atkins applied retrospectively to convicted murderers who were currently facing the death penalty and, therefore, as a petitioner who had been sentenced to death prior to Atkins had not had a full opportunity to litigate a claim of mental retardation, a petitioner could seek review of an Atkins claim in a late or subsequent postconviction petition.[11]
 {¶ 5} The Lott Court acknowledged the clinical definitions of mental retardation as cited in Atkins and noted the three key criteria for evaluating an Atkins claim. The defendant must demonstrate, "(1) significantly subaverage intellectual functioning, (2) significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction, and (3) onset before the age of 18."[12]
 {¶ 6} On June 9, 2003, Lorraine filed a postconviction petition in the trial court, alleging an Atkins claim of mental retardation. Lorraine included within his petition relevant testimony and IQ test results from his 1986 mitigation hearing. Moreover, as an indigent defendant, Lorraine requested the appointment of his two attorneys, who had represented him during his postconviction and habeas corpus proceedings, as well as the appointment of a mental health expert, discovery, a full evidentiary hearing, and a jury determination on the issue. In response, the state filed a motion to dismiss. The trial court subsequently denied all Lorraine's requests and granted the state's motion to dismiss.
 {¶ 7} Lorraine now files this present appeal, citing six assignments of error:
 {¶ 8} "[1.] In derogation of the Fourteenth Amendment to the Constitution of the United States, the trial court erred and circumvented the proceedings and the law announced at State v. Lott,[13] by summarily dismissing appellant's petition, brought under theEighth Amendment and Atkins v. Virginia[14] to bar his execution as a mentally retarded capital defendant.
 {¶ 9} "[2.] The Trumbull County Court of Common Pleas erred in refusing to grant a hearing on the post-conviction petition of Charles L. Lorraine on the issue of whether Mr. Lorraine is mentally retarded and thus ineligible for the death penalty under Atkins v. Virginia,[15]
where evidence in the record lends support to his claim and where no prior proceeding in any court has afforded the petitioner the opportunity to raise the factual issue of mental retardation."
 {¶ 10} Lorraine's first and second assignments of error both allege the trial court erred in failing to adhere to Lott and grant a hearing on the issue of mental retardation pursuant to Atkins. Thus, we will address both the first and second assignments of error in tandem.
 {¶ 11} We note initially that Lorraine was sentenced to death prior to the United States Supreme Court's decision in Atkins. Therefore, he had not been afforded a full opportunity to litigate his claim of mental retardation as a bar to his death sentence. Lorraine filed his postconviction petition, asserting his Atkins claim one hundred eighty days after the Supreme Court of Ohio's decision in Lott. Thus, the trial court had jurisdiction to hear his claim.[16]
 {¶ 12} Pursuant to R.C. 2953.21(A)(1), a petition for postconviction relief must demonstrate a denial or infringement of a petitioner's rights in the proceedings that render his conviction void or voidable under the Ohio Constitution or the United States Constitution. The petitioner bears the burden of demonstrating, through the petition itself and any supporting affidavits and the files and records of the case, "substantive grounds for relief."[17]
 {¶ 13} Moreover, the trial court may dismiss a postconviction claim without a hearing if the petitioner has failed to submit along with his petition any evidentiary material setting forth sufficient facts demonstrating substantive grounds for relief.[18] The trial court must grant a hearing if the petition and records of the case demonstrate that petitioner may be entitled to relief.[19]
 {¶ 14} Lorraine's Atkins petition included relevant portions of his 1986 mitigation hearing. During the penalty phase of the 1986 trial, Lorraine offered evidence relative to his educational history, cognitive development, and intellectual functioning, including an IQ test administered by the public school system. Expert and lay testimony was introduced regarding Lorraine's lack of social and personal skills, which left him unable to function adequately with respect to family, employment, and financial matters. The IQ test was administered in 1980, while Lorraine was in the sixth grade and demonstrated a full-scale score of seventy-three.
 {¶ 15} In its October 1, 2003 judgment entry dismissing Lorraine'sAtkins petition, the trial court concluded:
 {¶ 16} "Petitioner's demand for an evidentiary hearing is denied. The Court's `explicit findings of fact and conclusions of law' are set forth in this document, thereby negating the need for a hearing. Furthermore, the right to an evidentiary hearing on a petition for post-conviction relief is not automatic.[20] Before a trial court grants a hearing, it `shall determine whether there are substantive grounds for relief. [sic][21] This Court finds that because the record and Petitioner's petition contain examples only of his lack of mental retardation, there are no substantive grounds for relief presented in his petition. Therefore, Petitioner's petition is dismissed without a hearing."
 {¶ 17} Without the appointment of an expert, as will be addressed in Lorraine's third assignment of error, the trial court was left with only the evidence from the 1986 mitigation hearing. While the evidence presented at that hearing addressed Lorraine's mental capacity, it was presented solely for the purpose of whether his mental abilities provided mitigation against imposing the death penalty. The evidence was never presented to address the issue of mental retardation under theAtkins/Lott standard. That is, the evidence was not presented to demonstrate that Lorraine fell within the range of mentally retarded individuals, whose execution would violate the Eighth Amendment bar against cruel and unusual punishment.
 {¶ 18} Moreover, the IQ score of seventy-three, while above the rebuttable presumption score of seventy as pronounced in Lott, provides only a singular piece of evidence as to Lorraine's mental capacity, and is not dispositive of the issue of mental retardation for Atkins
purposes.[22]
 {¶ 19} Thus, we conclude that Lorraine's postconviction petition, with the supporting evidence from the 1986 mitigation hearing, demonstrated factual issues regarding whether he is mentally retarded under theAtkins standard. As Lorraine sustained his burden of demonstrating substantive grounds for relief, he was entitled to a hearing on the issue. Therefore, the trial court erred in failing to adhere to the standards set forth in Lott and in denying Lorraine's request for a hearing.
 {¶ 20} Lorraine's first and second assignments of error are with merit.
 {¶ 21} "[3.] The Trumbull County Court of Common Pleas erred in finding Charles L. Lorraine not to be mentally retarded based upon a record wherein the appellant had not previously been afforded the opportunity to raise the Atkins issue and where this indigent appellant was without resources to provide direct expert testimony on the issue prior to hearing and prior to a ruling on whether he was entitled to funding of an expert on mental retardation."
 {¶ 22} In his third assignment of error, Lorraine contends the trial court erred in failing to grant his request for expert assistance in determining whether he is mentally retarded and, thus, prohibited from being executed pursuant to Atkins and Lott.
 {¶ 23} In the October 1, 2003 judgment entry, the trial court stated:
 {¶ 24} "Petitioner's demand for expert assistance is likewise denied. The 11th District Court of Appeals has held that because post-conviction proceedings are civil in nature, a post-convictioner petitioner has no constitutional right to expert assistance.[23] The Petition affords this Court no reason to deviate from that holding. Therefore, this Court will not authorize court funds to conduct a tax-payer financed fishing expedition for additional experts in this case. This Court has before it a litany of I.Q. tests and expert evaluations which state that Petitioner is not mentally retarded. Petitioner submits no evidence to this Court which would suggest that a new round of expert evaluations and analysis would yield a different result."
 {¶ 25} Lorraine's Atkins postconviction petition included relevant testimony and IQ tests from the 1986 mitigation hearing. As noted supra, although that evidence was not offered at the time to meet the Atkins
standard for mental retardation, it did demonstrate impaired cognitive and intellectual functioning, and the petition, on its face, presented substantive grounds for relief, warranting a hearing on the matter. These facts, standing alone, demonstrate the need for an expert to evaluate that evidence under the Lott/Atkins three-prong test for mental retardation.
 {¶ 26} As stated by the Second Appellate District in its recent decision, State v. Bays:
 {¶ 27} "There is a significant difference between expert testimony offered for mitigation purposes and expert testimony offered for Atkins
purposes. Although the expert testimony presented at [appellant's] mitigation hearing regarding his intellectual limitations is relevant to [appellant's] Atkins claim, it was not developed either to prove or to disprove the issue presented by his Atkins claim[.]"[24]
 {¶ 28} The very same principle operates in the instant case and in every capital case in Ohio. The expert testimony provided at the mitigation hearing was presented solely as mitigating evidence against the imposition of the death penalty. In accordance with R.C. 2929.04(B)(3) and (B)(7), a court or a jury must weigh against the aggravating factors, the mitigating factor of "[w]hether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of the offender's conduct or to conform the offender's conduct to the requirements of the law" as well as "[a]ny other factors that are relevant to the issue of whether the offender should be sentenced to death."
 {¶ 29} The mitigation hearing, by definition, did not address the three-part test for mental retardation set forth in Atkins and adopted by Ohio in Lott. There is a rebuttable presumption that Lorraine is not mentally retarded as he had an IQ score above seventy. However, without expert assistance to interpret that score and the findings of the prior experts, Lorraine is truly left without any tools to attempt to establish his Atkins claim.
 {¶ 30} Thus, the logic utilized by the trial court, that Lorraine failed to present any evidence demonstrating that an expert is necessary to achieve a different result, falls in on itself. An indigent, postconviction petitioner cannot be required to show that an expert is needed to prove he is mentally retarded if an expert would indeed be required to make that showing.
 {¶ 31} We conclude the trial court erred and abused its discretion in denying Lorraine's request for expert assistance for the purposes of demonstrating he is mentally retarded pursuant to Atkins.
 {¶ 32} Lorraine's third assignment of error is with merit.
 {¶ 33} "[4.] The Trumbull County Court of Common Pleas erred in applying a presumption that the appellant was not a mentally retarded person on an IQ score of 73."
 {¶ 34} In his fourth assignment of error, Lorraine contends the trial court erred in applying the presumption that Lorraine is not mentally retarded using his IQ score of seventy-three from the 1986 mitigation hearing. In its judgment entry, the trial court stated, "[p]ursuant toLott, [Lorraine] is rebuttably presumed to not be mentally retarded by this score. Petitioner presents no evidence in his petition to rebut the presumption of no mental retardation, nor does he suggest that further testing would place him below an I.Q. of 70."
 {¶ 35} Lorraine contends that the Atkins Court did not designate a specific IQ score that would create a presumption of mental retardation. We disagree. Atkins stated that it was adhering to the definitions of mental retardation as promulgated by the American Association of Mental Retardation and by the American Psychiatric Association.[25] An IQ score of seventy typically denotes persons exhibiting mild mental retardation.[26] Thus, it is from that standard the Atkins Court derived its IQ score of seventy. Atkins also left it to the states to develop appropriate ways to enforce the constitutional restrictions on executing the mentally retarded.[27]
 {¶ 36} In State v. Lott, the Supreme Court of Ohio, in its application of Atkins, held the following:
 {¶ 37} "While IQ tests are one of the many factors that need to be considered, they alone are not sufficient to make a final determination on this issue.[28] We hold that there is a rebuttable presumption that a defendant is not mentally retarded if his or her IQ is above 70."[29]
 {¶ 38} Lorraine contends that Lott acknowledged a five-point margin of error in IQ testing and, thus, any IQ test within five points of seventy should be considered evidence of mental retardation. While the Lott Court acknowledged that the petitioner was raising the issue of the five-point margin of error in IQ testing, it did not adopt that standard but, rather, set forth the rebuttable presumption of mental retardation for above-seventy IQ scores.
 {¶ 39} As the Atkins Court left it to the states to devise the particular procedures to be implemented in determining the constitutional rights of offenders pursuant to Atkins and the Supreme Court of Ohio's rebuttable presumption for IQ testing does not run afoul of the Atkins
holding, we conclude the trial court did not err in utilizing the presumption. However, as noted supra, the trial court erred in denying Lorraine's motion for a hearing on the issue of mental retardation to provide Lorraine with the opportunity to rebut the presumption.
 {¶ 40} Lorraine's fourth assignment of error is without merit.
 {¶ 41} "[5.] The Trumbull County Court of Common Pleas erred in refusing to appoint his attorneys as counsel for purposes of his post-conviction petition preparation and prosecution, where the new constitutional issue of mental retardation and ineligibility for execution was being raised."
 {¶ 42} In his fifth assignment of error, Lorraine contends the trial court erred in refusing to appoint both counsel that had represented him during his appeal. Specifically, Lorraine avers that his Atkins claim of mental retardation presents a new constitutional issue, which warrants appointment of counsel.
 {¶ 43} Sup.R. 20 provides for appointment of counsel for indigent defendants in capital cases. It reads, in part:
 {¶ 44} "(A) This rule shall apply in cases where an indigent defendant has been charged with or convicted of an offense for which the death penalty can be or has been imposed.
 {¶ 45} "* * *
 {¶ 46} "(C) If the defendant is entitled to the appointment of counsel, the court shall appoint two attorneys certified pursuant to this rule."
 {¶ 47} The language in the Rule demonstrates an intent to provide two attorneys, properly certified, to provide assistance to an indigent defendant in a capital case. The Rule states that counsel shall be provided when the death penalty "can be or has been imposed." In other words, after conviction and imposition of the death sentence, the indigent defendant maintains the right to two qualified attorneys to represent the defendant.
 {¶ 48} In its brief, the state maintains that, under Ohio law, a capital defendant has no right to counsel in postconviction proceedings.[30] The thrust of the state's argument is that a capital defendant is owed only a limited amount of due process during postconviction proceedings and that due process does not guarantee a hearing nor appointed counsel.[31]
 {¶ 49} While the state's authority provides an accurate statement of the law in general postconviction proceedings, we conclude it does not apply in the context of an Atkins claim properly raised for the first time via a postconviction petition. Although postconviction proceedings under R.C. 2953.21(A)(1) have clearly been held to be civil in nature, theAtkins and Lott cases, when read in context with Sup.R. 20 appear to establish a special category for the appointment of counsel regarding the determination of mental retardation in capital cases, which would require the appointment of two certified attorneys to represent a capital defendant in a Lott case undertaking.
 {¶ 50} Moreover, a capital defendant asserting an Atkins claim in a postconviction petition is raising a constitutional issue that was not and could not have already been litigated by the defendant.[32] The Lott
Court recognized the significance of this first opportunity to raise a constitutional issue and held that the doctrine of res judicata does not apply to Atkins claims. This preservation of a constitutional claim underscores the importance of providing a capital defendant with the opportunity to fully present his constitutional issue, even in the postconviction context. That opportunity includes the appointment of two certified attorneys as dictated by the Rules of Superintendence.
 {¶ 51} Therefore, we conclude that, pursuant to the Rules of Superintendence, a capital defendant is entitled to the appointment of two certified attorneys when an Atkins claim is raised for the first time in a postconviction petition.
 {¶ 52} Lorraine's fifth assignment of error is with merit. {¶ 53}
"[6.] The trial court erred in not granting Charles Lorraine's request, as set forth in his petition, for a jury determination on the issue of mental retardation."
 {¶ 54} In his sixth and final assignment of error, Lorraine contends the trial court erred in denying his request for a jury determination on the issue of mental retardation pursuant to Atkins. In its judgment entry the trial court stated:
 {¶ 55} "The Lott case has specifically stated that Petitioner is not entitled to a jury trial on the issue of his purported mental retardation.[33] Therefore, this demand is denied."
 {¶ 56} The Lott Court noted, "[w]e believe that these matters should be decided by the court and do not represent a jury question."[34]
Thus, the court concluded the mental retardation issue in an Atkins claim should be ruled on similarly to a ruling on competency, where a judge, and not a jury, decides the issue.[35]
 {¶ 57} Therefore, as the Supreme Court of Ohio has already spoken to the issue of a postconviction determination of mental retardation, concluding it is a matter within the purview of the trial court and not a jury determination, and that it is akin to a competency evaluation, we are compelled to adhere to that precedent.
 {¶ 58} Lorraine's sixth assignment of error is without merit.
 {¶ 59} Based on the foregoing, Lorraine's first, second, third, and fifth assignments of error are with merit. Lorraine's fourth and sixth assignments of error are without merit. The judgment of the Trumbull County Court of Common Pleas is reversed, and the matter is remanded for proceedings consistent with this opinion.
Ford, P.J., O'Toole, J., concur.
[1] State v. Lorraine (Aug. 10, 1990), 11th Dist. No. 3838, 1990 Ohio App. LEXIS 3324.
[2] State v. Lorraine (1993), 66 Ohio St.3d 414.
[3] State v. Lorraine (Feb. 23, 1996), 11th Dist. No. 95-T-5196, 1996 Ohio App. LEXIS 642; State v. Lorraine (Sept. 1, 2000), 11th Dist. No. 99-T-0060, 2000 Ohio App. LEXIS 3982.
[4] State v. Lorraine (2001), 91 Ohio St.3d 1416.
[5] Lorraine v. Coyle (N.D. Ohio 2001), 2001 U.S. Dist. LEXIS 23248.
[6] Lorraine v. Coyle (C.A.6, 2002), 291 F.3d 416.
[7] Lorraine v. Coyle (2003), 538 U.S. 947.
[8] Atkins v. Virginia (2002), 536 U.S. 304.
[9] State v. Lott, 97 Ohio St.3d 303, 2002-Ohio-6625.
[10] Id. at ¶ 13.
[11] Id. at ¶ 17.
[12] State v. Lott, at ¶ 12.
[13] State v. Lott, supra.
[14] Atkins v. Virginia, supra.
[15] Id.
[16] State v. Lott, at ¶ 24.
[17] R.C. 2953.21(C).
[18] State v. Jackson (1980), 64 Ohio St.2d 107.
[19] R.C. 2953.21(E).
[20] State v. Jackson, supra, at 110.
[21] R.C. 2953.21(C).
[22] Id.
[23] State v. Williams (Oct. 16, 1998), 11th Dist. No. 97-T-0153, 1998 Ohio App. LEXIS 4884, at 9.
[24] State v. Bays, 159 Ohio App.3d 469, 2005-Ohio-47, at ¶23.
[25] Atkins, 536 U.S. 304, 309, fn. 3.
[26] Id.
[27] Atkins, at 317.
[28] Murphy v. State (Okla.Crim.App. 2002), 54 P.3d 556, 568.
[29] Lott, at ¶ 12.
[30] The state cites State v. Carter (2001), 93 Ohio St.3d 581 in support of its contention; however, we note that Carter concerns whether there is a right to counsel for a reopening and not in the postconviction context.
[31] The state cites Pennsylvania v. Finley (1990), 481 U.S. 551 for this contention. The state also cites a number of other state and federal case law, all of which predate the Atkins decision.
[32] Lott, at ¶ 19.
[33] State v. Lott, at ¶ 18.
[34] Id. at ¶ 18.
[35] Id.; See, also, State v. Were, 1st Dist. No. C-030485, 2005-Ohio-376, at ¶ 55.