{¶ 21} Clearly, before State v. Lorraine, Trumbull App. No. 2003-T-0159, 2005-Ohio-2529, the law of Ohio has been that Sup.R. 20 does not create a substantive right for a defendant to use to achieve a reversal of an adverse verdict or judgment. Indeed, as the state has argued throughout, the Supreme Court of Ohio has labeled these rules of superintendence as housekeeping rules,not substantive rights. The majority has relied upon Sup.R. 20 and State v. Lott, 97 Ohio St.3d 303, 2002-Ohio-6625, for the creation of a new right, which has not existed or hereto been recognized. For the reasons stated in my original dissent, which I have elaborated on herein, I respectfully disagree with the majority's conclusion. Because I find the same to be error, I would sustain the state's motion for reconsideration.
 {¶ 22} The majority concluded that defendant is entitled to two attorneys because, had he been able to raise an Atkins
defense at trial, he would have been represented by two attorneys at that time. That rationale, however, likens defendant's post-conviction petition to a trial, which it is not. In Lott,
at ¶ 17, the Supreme Court explained that "[b]ecause Lott's
claim is in the nature of a postconviction relief claim filed for the first time since Atkins established the new standard for mental retardation, Lott's petition is more akin to a firstpetition than a successive petition for postconviction." (Emphasis added.) The Supreme Court could have analogized Lott'sAtkins claim as being akin to "a trial issue," but instead, it chose to equate Lott's claim with "a first petition." Id. So, while I am cognizant of the majority's underlying rationale, I find Lott does not support it.
 {¶ 23} As for the majority's application of Sup.R. 20, the majority has, in essence, converted Sup.R. 20 from a housekeeping rule into one conferring a substantive right. This is inconsistent with the long held view that "[t]he Rules of Superintendence are not designed to alter basic substantive rights of criminal defendants." State v. Singer (1977),50 Ohio St.2d 103, 110. See, also, State v. Cornwell, Mahoning App. No. 00-CA-217, 2002-Ohio-5177, at ¶ 35 ("the Rules of Superintendence for Courts of Common Pleas are guidelines for judges only and do not create substantive rights on the part of individual litigants"), citing State v. Mahoney (1986),34 Ohio App.3d 114, 116-117; State v. Gettys (1976), 49 Ohio App.2d 241, 243. In Singer, supra, the defendant pitted the outer limits of a speedy trial as defined in R.C. 2945.71, which was 90 days, against the 60-day time limit found in Sup.R. 8. The Supreme Court held that because R.C. 2945.71 through 2945.73 rationally attempted to define speedy trial, Sup.R. 8 was "immaterial to the disposition of [that] case." Singer, at 110.
 {¶ 24} As explained in my original dissent, Sup.R. 20 is "immaterial" to the disposition of this case because R.C.2953.21(I), which governs post-conviction in capital cases, does not require the appointment of two attorneys. On its face, Sup.R. 20 does not fall within the purview of post-conviction relief.[1] This point was made by S. Adele Shank, a criminal defense attorney whose practice is primarily death penalty defense, and former chair of the Death Penalty Sub-Committee of the Ohio State Bar Association Criminal Justice Committee. In a law review article published in the Ohio State Law Journal, Shank noted that Sup.R. 20 did not provide for the certification of capital post-conviction counsel, and the rule "applie[d] only to trial and appellate counsel." Shank, The Death Penalty in Ohio: Fairness, Reliability, and Justice at Risk — A Report on Reforms in Ohio's Use of the Death Penalty Since the 1997 Ohio State Bar Association Recommendations Were Made (2002), 63 Ohio St.L.J. 371, 406. To that end, Shank makes clear that the role Sup.R. 20 plays in post-conviction proceedings is limited to its reference contained in R.C. 2953.21(I)(2), which merely requires post-conviction counsel be certified under Sup.R. 20.
 {¶ 25} There is no mistaking the fact that, if not for R.C.2953.21, capital defendants would have no right to counsel in post-conviction proceedings in Ohio. State v. Spirko (1998),127 Ohio App.3d 421, 429; see, also, Murray v. Giarratano
(1989), 492 U.S. 1, 109 S.Ct. 2765 (no constitutional right to post-conviction counsel in capital cases). As noted in my original dissent, R.C. 2953.21(I)(2) does not mandate the appointment of two attorneys. Rather, the statute provides for the appointment of "only an attorney who is certified under Rule 20 of the Rules of Superintendence for the Courts of Ohio," and makes references to the word "attorney" in the singular. The statute also does not give any special consideration to a capital defendant raising a new constitutional right for the first time on post-conviction relief. There is simply no need to "resort to judicial default rules," such as Sup.R. 20, when the legislature's intent is "manifest on its face." Lockheed Corp.v. Spink (1996), 517 U.S. 882, 896-897, 116 S.Ct. 1783, quotingLandgraf v. USI Film Products (1994), 511 U.S. 244, 280,114 S.Ct. 1483.
 {¶ 26} To reverse the judgment of the trial court on the basis that it failed to appoint two attorneys to represent defendant in his post-conviction proceeding, when neither Sup.R. 20 nor R.C. 2953.21(I)(2) require the appointment of two attorneys, contravenes the well-established rule that an appellate court must make every reasonable presumption in favor of the trial court's judgment and findings of fact. Shemo v.Mayfield Hts. (2000), 88 Ohio St.3d 7, 9-10. Thus, based upon the plain language of R.C. 2953.21(I), I respectfully disagree with the majority's conclusion that the trial court committed reversible error when it failed to appoint two attorneys to represent defendant in his post-conviction proceeding. I also find the fact defendant is asserting a new constitutional right for the first time is irrelevant until the legislature states otherwise.
 {¶ 27} With respect to the majority's reliance uponLorraine, such reliance is misplaced. In reaching its conclusion, the Lorraine court noted that Sup.R. 20(A) provided for the appointment of counsel for indigent defendants in capital cases. At that time, Sup.R. 20(A) read, "[t]his rule shall apply in cases where an indigent defendant has been charged with or convicted of an offense for which the death penalty can be or has been imposed." The court seized upon the phrase, "can be or has been imposed," as mandating the appointment of two attorneys for an indigent capital defendant in a post-conviction proceeding. The amendment history of Sup.R. 20, however, discloses that same language has been deleted from the current version of Sup.R. 20, effective March 7, 2005. Although the amendment to the rule became effective after the trial court rendered its decision, courts have construed Civ.R. 86 to permit the application of a newly enacted or amended Rule of Superintendence even though the decision appealed from preceded the adoption or amendment. See, e.g., In re Brandt (Mar. 1, 1988), Clark App. No. 2383;Drinkard v. Drinkard (Jan. 11, 1989), Summit App. No. 13656. Given that the language relied upon by the Lorraine court to reach its conclusion has been deleted from Sup.R. 20, its authoritative value is completely diminished.
 {¶ 28} The majority herein also has implied that the Supreme Court's denial of certiorari in Lorraine is an affirmance of the merits. I believe that position reads too much into the denial of certiorari, as denial of certiorari "imports no expression of opinion upon the merits of a case." Alabama v.Evans (1983), 461 U.S. 230, 236, 103 S.Ct. 1736 (citations omitted). This is especially true of Lorraine, in which the main point of error was the trial court's refusal to provide Lorraine with a Lott hearing, and the issue of two attorneys was gratuitously addressed as an afterthought.
 {¶ 29} I am also persuaded by the state's position that the majority's opinion, which presupposed prejudice in the failure to follow Sup.R. 20 (which, I have made clear, was not controlling in this instance), is in direct conflict with the judgment rendered by the Sixth District Court of Appeals in State v.Misch (1995), 101 Ohio App.3d 640. Misch held that the failure to follow C.P.Sup.R. 65, the predecessor to Sup.R. 20, does not create reversible error absent a demonstration of prejudice. The majority herein did not find a conflict existed because this case addressed Sup.R. 20 in relation to raising a new constitutional right on post-conviction, whereas Misch involved a claim for ineffective assistance of counsel based on the fact one of his trial attorneys lacked Sup.R. 20 certification. In my view, these factual differences are irrelevant to the certification analysis; both courts addressed the issue of whether noncompliance with Sup.R. 20 is grounds for automatic reversal, and the judgments of both courts are at odds.
 {¶ 30} With respect to the state's argument that the majority's opinion failed to address the issue of prejudice, I agree, and find this also serves as a basis for sustaining its motion for reconsideration. As previously stated, the majority's opinion has presumed reversible prejudice. Indeed, the record is void of any evidence that defendant was prejudiced, let alone, materially prejudiced, by the trial court's failure to appoint two attorneys. Nor has defendant claimed that his attorney has somehow been deficient. To the contrary, defendant was appointed an attorney who, single-handedly, has provided him with excellent legal representation, and it is hard to imagine how defendant could benefit from the appointment of a second attorney.
 {¶ 31} The state has also argued that the majority's direction on remand, that the trial court must adjust defendant's IQ for the standard margin of error, conflicts with the Fifth District Court of Appeals in State v. Elmore, Licking App. No. 2005-CA-32, 2005-Ohio-5940. In considering the issue of margin of error on IQ assessment, the Elmore court acknowledged that the Supreme Court of Ohio in Lott did not require any adjustment be made, and found that such theory is "based upon an assumption that, while it may be valid in the field of psychology, is not a valid factor in assessing mental retardation for an Atkins-Lott
claim." Id. at ¶ 49. The majority declined to certify a conflict based upon the factual differences between this case andElmore. Specifically, that Elmore did not intend to raise anAtkins claim during trial. While that is correct, the basis of Elmore's argument on post-conviction was that he was not provided with effective assistance of counsel because his attorneys declined to develop an Atkins defense based upon the report of a physician who was not aware of the diagnostic criteria for mental retardation. To support his argument, Elmore proffered the report of another physician, who opined that the five-point margin of error in Elmore's IQ assessment must be taken into consideration. The court discounted that factor in assessing anAtkins-Lott claim, and ultimately, found Elmore's trial counsel made a tactical decision. As such, I believe this is enough to certify a conflict.
 {¶ 32} With respect to the majority's reversal and remand concerning the standard margin of error issue, I believe this, too, is in error. The trial court held an evidentiary hearing, considered all the evidence proffered by defendant, including the testimony of Dr. Reardon, of whom the trial court even asked questions. While the trial court did state it did not find evidence relating to the margin of error issue to be "authoritative," it is clear, based on the record, that the trial court meant that it did not find the evidence proffered by defendant to be "persuasive." To that end, I would not reverse the trial court based on semantics.
 {¶ 33} In its final analysis, the fear of this dissent is that the majority has elevated a Rule of Superintendence above a statute. If the Supreme Court has acknowledged that its own rules are subservient to the Ohio Revised Code, then is not the same true here? Though the instant matter may be addressing Sup.R. 20 in terms of an Atkins-Lott claim, as society changes, and the law evolves, new rights will be created. Nor are the ramifications of the majority's opinion confined to criminal law. It is difficult to estimate the full impact of the majority's opinion, but its potential may be far from trivial.
 {¶ 34} Accordingly, I would sustain the motion for reconsideration, overrule the assignments of error, and affirm the judgment of the common pleas court. I also find the judgment of the majority, relating to the two issues discussed herein, conflicts with the judgment in Misch and Elmore, supra, and would sustain the motion to certify conflicts to the Supreme Court of Ohio for resolution.
[1] It is worth noting that while several states require the appointment of two trial and appellate counsel to indigent capital defendants, independent research has not disclosed any state, except for Ohio, that has required the appointment of two attorneys in raising an Atkins claim on post-conviction relief.