{¶ 156} I concur with the well-reasoned majority opinion, but write separately to emphasize the significance of this court's application of the doctrine of res judicata in a capital murder case. Nowhere is the concept of "one bite at the apple" more important than when the state is seeking to impose the death penalty upon one accused of murdering another. When a client is facing the death penalty, both the client and his counsel are on notice that decisions on trial strategies will have profound consequences.
 {¶ 157} In a petition for postconviction relief, Jackson's counsel has raised the very serious question of racial imbalance in both jury selection and prosecution of capital murder cases in Trumbull County. This is a constitutional question of significant import. As stated by the Supreme Court of Ohio, "`the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial.'"[4] The court went on further to hold that:
 {¶ 158} "A defendant may also reasonably bring a federal equal protection challenge to the selection and composition of the petit jury by adducing statistical evidence which shows a significant discrepancy between the percentage of a certain class of people in the community and the percentage of that class on the jury venires, which evidence tends to show discriminatory purpose, an essential element of such cases."[5]
 {¶ 159} In addition to the question of racial imbalance, appellant challenges the trial court's refusal to appoint an expert to assist him in researching and clarifying the extent of the problem.
 {¶ 160} In support of this position, appellant's counsel directs this court's attention to the recently decided case ofUnited States v. Rodriguez-Lara, which is clearly on point. As stated by the court:
 {¶ 161} "The selection of a grand or petit jury in violation of either the equal protection or the fair cross-section guarantee is structural error that entitles a defendant to relief without a demonstration of prejudice."[6]
 {¶ 162} In reversing the conviction, the federal appellate court went on to explain the inherent injustice in the denial of expert assistance in a statistical analysis case.
 {¶ 163} "Rodriguez's failure to complete his prima facie case is not fatal to his appeal of the denial of his motion to have an expert appointed. Indeed, conditioning the entitlement to an expert on a defendant's establishing a prima facie case would make little sense: such a rule would provide assistance to a defendant only upon a demonstration that he does not requireit. Instead, we must determine whether (1) `reasonably competent counsel would have required the assistance of the requested expert for a paying client,' and (2) the defendant `was prejudiced by the lack of expert assistance.'"[7]
 {¶ 164} This court has recently addressed this very question in a postconviction petition dealing with the mental retardation of an individual who was found guilty in a capital murder case. As we stated in State v. Lorraine:
 {¶ 165} "[T]he logic utilized by the trial court, that Lorraine failed to present any evidence demonstrating that an expert is necessary to achieve a different result, falls in on itself. An indigent, postconviction petitioner cannot be required to show that an expert is needed to prove he is mentally retarded if an expert would indeed be required to make that showing.
 {¶ 166} "We conclude the trial court erred and abused its discretion in denying Lorraine's request for expert assistance for the purposes of demonstrating he is mentally retarded pursuant to Atkins."[8], [9]
 {¶ 167} Unlike the matter at hand, the Lorraine decision was not hampered by the doctrine of res judicata, as the Supreme Court of Ohio had ruled in State v. Lott that the rights being protected in mental retardation/capital punishment cases were to be applied retrospectively.[10] Thus, even though Lorraine was convicted in 1986, he could proceed with his petition for postconviction relief because of the retrospective application ordered by the Supreme Court of Ohio in State v. Lott.
 {¶ 168} The inquiry in this matter, however, does not stop with the question of whether or not the appointment of an expert would have assisted this appellant in this proceeding. Undoubtedly, it would have assisted him. However, in a res judicata and ineffective assistance of counsel hybrid analysis, there is the additional distinction to be made between theories of defense that should have been raised, and those that could have been raised. It is not possible to raise every single conceivable defense in every case. Nor is it logical to require defense counsel to waste his or her, or the court's, limited resources searching to the very end of every blind alley.
 {¶ 169} The evidence in this case was overwhelming. Appellant fired the fatal shots. In my opinion, the most racially balanced and favorable jury in the world, composed of appellant's friends, relatives, and acquaintances, would have readily accepted that proposition. A self-defense theory was the only avenue open to defense counsel. When the strategic decision to mount the self-defense theory was in play, obviously any racial imbalance in the composition of the jury was also in existence on that same day. Counsel clearly could have explored that defense strategy at that time. He did not.
 {¶ 170} Conversely, it is intellectually disingenuous to fault counsel for an unsuccessful self-defense strategy and for not turning every stone in his search for a different defense. In the instant matter, defense counsel made a defensible, tactical, and strategic decision to pursue a self-defense theory. It did not work. Pursuant to the doctrine of res judicata, defense counsel is not now required or permitted to change course and pursue a different strategy. As the trial court properly held, a defense that could have been raised, and was not, is barred by res judicata.
 {¶ 171} I write also to defend the doctrine of res judicata. Much attention is directed to the beneficial effect of the doctrine in bringing finality to a proceeding. All trials must end at some point. But there is a second, and perhaps more compelling, aspect to the doctrine. In order for outcomes to be worthy of support, they must be the result of a fair trial. And fairness at its core requires that all the cards be placed on the table at the same time. I refer to that as the "could have, should have" aspect of res judicata. Errors in proceedings must be raised and addressed at a time when they can reasonably be corrected. It would be wrong to allow a party to remain silent prior to or during trial, where he has knowledge of a reversible error that could be corrected at the time, only to raise the error after he has been convicted and sentenced. Under the doctrine of "invited error," "[a] party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make."[11] To permit Jackson to pursue his claim at this time would be tantamount to condoning an invited error. Such a proposition would reduce courts to the position of referees in an elaborate game of "gotcha" designed to determine who had the most skillful lawyer. That is not the law in Ohio.
 {¶ 172} In conclusion, I feel the trial court's ruling was correct. Is there racial imbalance in the Trumbull County jury selection process? I do not know. Could that have been raised at the trial? Yes. Was it? No. Therefore, the trial court properly held that, as far as the composition of the jury is concerned, the doctrine of res judicata applies to bar this claim.
[4] State v. Fulton (1991), 57 Ohio St.3d 120, 123, quotingTaylor v. Louisiana (1975), 419 U.S. 522, 528.
[5] Id. at 123-124.
[6] (Citations omitted.) United States v. Rodriguez-Lara
(C.A.9, 2005), 421 F.3d 932, 940.
[7] (Emphasis added.) Id. at 946, quoting United States v.Nelson (C.A.9, 1998), 137 F.3d 1094, 1101, fn. 2.
[8] Atkins v. Virginia (2002), 536 U.S. 304.
[9] State v. Lorraine, 11th Dist. No. 2003-T-0159,2005-Ohio-2529, at ¶ 30-31.
[10] State v. Lott, 97 Ohio St.3d 303, 2002-Ohio-6625, at ¶17.
[11] Lester v. Leuck (1943), 142 Ohio St. 91, paragraph one of the syllabus.