OPINION
{¶ 1} Appellant, Charles L. Lorraine, appeals the August 9, 2006 judgment entry of the Trumbull County Court of Common Pleas, which, inter alia, denied appellant's motion for a protection order to have his institutional mental health records remain sealed for purposes of determining whether he is mentally retarded upon review of his Atkins claim. For the reasons that follow, we affirm.
 {¶ 2} Facts and Procedural History *Page 2 
 {¶ 3} This is the second time appellant's post-conviction review of his Atkins claim is before this court. See State v. Lorraine, 11th Dist. No. 2003-T-0159, 2005-Ohio-2529 ("Lorraine I"). In his first appeal, appellant challenged the trial court's dismissal of his petition for post conviction relief. Appellant had been convicted of four counts of aggravated murder and two counts of aggravated burglary on November 18, 1986, and was sentenced to death on December 9, 1986. He filed his petition on June 9, 2003, based upon the United States Supreme Court decision of Atkins v. Virginia (2002), 536 U.S. 304, which held that the execution of mentally retarded persons violates the Eighth Amendment's prohibition against cruel and unusual punishment and the Supreme Court of Ohio's decision of State v. Lott, 97 Ohio St.3d 303, 2002-Ohio-6625, which delineated the procedures Ohio would follow in determining whether a capital defendant is mentally retarded.
 {¶ 4} In support of his petition, appellant submitted mitigation testimony and IQ test results from his 1986 mitigation hearing. At the time, the trial court sua sponte ordered the production of appellant's institutional records from Mansfield Correctional Institute so that these records could be used, along with other evidence, to determine whether he is, in fact, mentally retarded. Appellant asked the court to seal these records, which it did. However, the trial court dismissed the petition for post-conviction relief finding there were no substantive grounds for relief.
 {¶ 5} In Lorraine I, this court found that dismissal was inappropriate since appellant had met his burden by demonstrating factual issues regarding whether he is mentally retarded under the Atkins standard. We reversed and remanded the case to the trial court and ordered the court to conduct a full evidentiary hearing and to appoint *Page 3 
experts to evaluate whether he is, in fact, mentally retarded pursuant to Atkins. Lorraine I at ¶ 19.
 {¶ 6} Upon remand, appellant filed different motions, including, inter alia, a motion for a protective order so that his institutional mental health records would remain sealed. The trial court held a preliminary hearing, which was transcribed, to address preliminary motions including the issue of the sealed mental health records. At the hearing, appellant's counsel and the state presented arguments concerning whether these records should be unsealed and considered for purposes of theAtkins claim. Appellant's counsel argued that because there must be an onset of mental retardation before age eighteen, these institutional records are irrelevant. The state, however, argued that the records are admissible and should be considered in the determination of whether appellant is mentally retarded.
 {¶ 7} The trial court agreed with the state's position and ordered that the sealed mental health records be unsealed. The court's rationale was that "these records will be necessary for counsel to prepare and for an expert to adequately opine on the Defendant's present status." Appellant appealed that decision to this court. Appellee filed a motion to dismiss the instant appeal arguing that there was no final appealable order. This court held that the order to unseal the mental health records poses a confidentiality issue and that appellant would not be afforded a meaningful or effective remedy after the merits of the post-conviction petition were decided once the sealed records were unsealed. Thus, we determined that the order was a final, appealable order and that the appeal was properly before this court.
 {¶ 8} Appellant raises three assignments of error for our review: *Page 4 
 {¶ 9} "[1.] In derogation of the Fourteenth Amendment guarantees of procedural and substantive due process, the trial court erred by determining that a post conviction proceeding, brought in accordance with State v. Lott (2002), 97 Ohio St.3d 303, Atkins v. Virginia,536 U.S. 304 (2002) [sic] and the Eighth Amendment, to determine the constitutionality of an imposed death sentence anticipates and, by implication, requires a present-time condition of mental retardation. (Judgment Entry, August 9, 2006)
 {¶ 1O} "[2.] In derogation of the Fourteenth Amendment guarantees of equal protection of law, the trial court erred by determining that a post conviction proceeding, brought in accordance with State v.Lott (2002), 97 Ohio St.3d 303, Atkins v. Virginia, 536 U.S. 304 (2002) [sic] and the Eighth Amendment, to determine the constitutionality of an imposed death sentence anticipates and, by implication, requires a present-time condition of mental retardation. (Judgment Entry, August 9, 2006)
 {¶ 11} "[3.] In derogation of the Fifth, Sixth and Fourteenth Amendments, the trial court erred by requiring that a post conviction proceeding, (brought in accordance with State v. Lott (2002),97 Ohio St.3d 303, Atkins v. Virginia, 536 U.S. 304 (2002) [sic] and the Eighth Amendment, to determine the constitutionality of an imposed death sentence) [sic] examine, consider and determine issues not raised by the post conviction petition or the record."
 {¶ 12} Standard of Review
 {¶ 13} At the outset, we review the trial court's decision to deny appellant's protective order and to unseal the mental health records under an abuse of discretion standard. "In the regulation of discovery, the trial court has discretionary power and its decisions will not be overturned absent an abuse of that discretion." Armstong v. *Page 5 Marusic, 11th Dist. No. 2001-L-232, 2004-Ohio-2594, at ¶ 17, citingMauzy v. Kelly Services, Inc. (1996), 75 Ohio St.3d 578, 592. Abuse of discretion connotes an attitude that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Furthermore, "[a]s a postconviction relief proceeding is a collateral civil attack on a judgment, the judgment of the trial court is reviewed under the abuse of discretion standard." State v. Gondor,112 Ohio St.3d 377, 2006-Ohio-6679, at ¶ 49, citing State v. Pierce (Dec. 22, 2000), 11th Dist. No. 98-L-232, 2000 Ohio App. LEXIS 6091, 5.
 {¶ 14} Atkins and its Progeny
 {¶ 15} In Atkins, the United States Supreme Court held that executing mentally retarded criminal defendants "is excessive and that the Constitution `places a substantive restriction on the State's power to take the life' of a mentally retarded offender." Atkins at 321, citingFord v. Wainright (1986), 477 U.S. 399, 405. In reaching this holding, the Atkins court specifically deferred to the states' discretion to establish procedures for determining whether a capital defendant is mentally retarded.
 {¶ 16} In Lott, the Supreme Court of Ohio delineated the procedures for post-conviction relief and the means for reviewing anAtkins claim. The court held that mental retardation must be proven by a preponderance of the evidence. Lott at ¶ 17. It further adopted the following three-prong test in accordance with the American Association of Mental Retardation and the American Psychiatric Association's standards. The defendant must demonstrate: "(1) significantly subaverage intellectual functioning, (2) significant limitations in two or more adaptive skills, such as *Page 6 
communication, self-care, and self-direction, and (3) onset before the age of 18." Id. at ¶ 12.
 {¶ 17} The Lott court recognized that while there is a rebuttable presumption that a defendant is not mentally retarded if his or her IQ is above 70, IQ alone is not determinative. Id. The Lott court further emphasized that in evaluating an Atkins claim, the trial court shall conduct its own de novo review of the evidence and rely on expert opinions to determine whether the defendant is mentally retarded. Id. at ¶ 18.
 {¶ 18} Time-Frame for Determining Mental Retardation and Access toPost-Trial Mental Health Records
 {¶ 19} In his first and second assignments of error, appellant challenges the trial court's decision to unseal his mental health records and argues that the court incorrectly held that Atkins
"anticipates a present condition of mental retardation." Appellant maintains that Atkins and Lott confine the trial court to review his mental status exclusively at the time of the crime and that a present-day evaluation of his mental status and consideration of his institutional mental health records deprives him of equal protection and due process.
 {¶ 20} Whether the trial court abused its discretion in ordering the mental health records disclosed and in considering his present mental status is dependent upon whether the trial court was correct in concluding that the records are necessary to determine whether appellant is mentally retarded for purposes of his Atkins claim. Again, appellant argues that his constitutional right to equal protection and due process has been violated by the trial court's decision to examine hispresent mental status rather than looking at his status at the time the crime was committed. He further *Page 7 
contends that "[t]here is no factual, scientific validity explained nor any legal authority cited in the trial court's judgment which provide a basis to include or develop post-offense evidence of behavior during incarceration when determining an Atkins [sic] claim."
 {¶ 21} Initially, we note that the court's reference to appellant's "present status" and "present condition of mental retardation" is actually a misnomer. While the determination of whether a defendant is mentally retarded under Atkins standards must be made in the present, the manifestation of mental retardation must occur before age eighteen. The trial court should not have couched the inquiry in terms of "present mental status."[1] Nevertheless, the question of a relevant "time-frame," is "more semanical [sic] than real * * * [s]ince mental retardation is a developmental disability that becomes apparent before adulthood." Bowling v. Kentucky (2005), 163 S.W.3d 361, 376.
 {¶ 22} Despite the use of this language, we find that the trial court's entry, in its effect, does not restrict its review solely to a consideration of appellant's present mental state. When the order is read in its entirety, it becomes clear that the court anticipated that because mental retardation must be onset before age eighteen, there must also be evidence introduced that reflects this early onset. The court specifically stated: "This Court acknowledges that there is a dispute regarding as to what period of time the determination for mental retardation should be made. Obvious [sic] an early determination [of mental retardation] has to be made because of onset before age 18 is required. But the Atkins decision is based on cruel and unusual punishment and *Page 8 
anticipates a present condition of mental retardation. The Court finds these records would be necessary in order for this Court to make an appropriate decision and for experts to evaluate the case."
 {¶ 23} We agree with the trial court's conclusion that these records should be considered and reject appellant's argument that the trial court should be precluded from considering any post-trial evidence regarding his claim of mental retardation. The Lott court affirmatively stated that in determining whether the defendant is mentally retarded, "[t]he trial court should rely on professional evaluations of [the defendant's] mental status, and consider expert testimony, appointing experts if necessary * * *." Lott at ¶ 18. (Emphasis added.)
 {¶ 24} Neither Atkins nor Lott restricts the trial court's review of an Atkins claim to evaluations done at the time of the crime. Nor do these decisions exclude evidence accumulated post-trial that is relevant for use by experts in evaluating a post conviction Atkins claim. Rather, these decisions made it clear that experts may need to be appointed to give their opinions on whether the defendant is mentally retarded. Since evaluations are being ordered and considered in the present, it follows by implication that these courts anticipated that trial courts would be considering the defendant's post-offense mental status in making its present-day determination. In fact, because mental retardation was not at issue pre-Atkins and the evidence adduced at trial was not tailored toward that issue, it is to be expected that appointed experts may need to perform current evaluations and consider post-trial evidence. *Page 9 
 {¶ 25} As we recognized in Lorraine I: "There is a significant difference between expert testimony offered for mitigation purposes and expert testimony offered for Atkins purposes. Although the expert testimony presented at [appellant's] mitigation hearing regarding his intellectual limitations is relevant to [appellant's] Atkins claim, it was not developed either to prove or to disprove the issue presented by his Atkins claim[.]" Lorraine at ¶ 27, quoting, State v. Bays,159 Ohio App.3d 469, 2005-Ohio-47, at ¶ 23. Thus, "the factual/legal determination [of whether one is mentally retarded] must be made following a hearing during which the court will be guided by evaluation and diagnosis made by those with expertise in diagnosing mental retardation." Louisiana v. Dunn, 831 So.2d 862, at ¶ 60.
 {¶ 26} Furthermore, because protocols or testing procedures used at the time of the trial may be outdated, post-trial evaluations and current evaluations of the defendant's mental status and adaptive skills may need to be considered by the experts. As one commentator has noted: "Appellate courts and lawyers who rely on [IQ] test scores as indications of mental retardation should be aware that they may be placing their faith in the results of mental-retardation measurements that were never intended to be used in a legal context. The test [sic] themselves were designed only to be academic screening devices but were later used for what by contemporary standards would be considered pernicious purposes." Davis, Death-Penalty Appeals and Post-Conviction Proceeding: Intelligence Testing and Atkins: Considerations for Appellate Courts and Appellate Lawyers (Fall, 2003), 5 J. App. Prac. Process 297, 312.
 {¶ 27} This point was emphasized by the court in State v. Waddy, 10th Dist. No. 05AP-866, 2006-Ohio-2828, which involved the similar issue presented in Lorraine I, i.e. *Page 10 
the need for an evidentiary hearing and appointment of experts. The court noted, with respect to pre-Atkins/Lott testing: "[The expert] conducted his evaluation, however comprehensive it may be, seven years prior to Atkins. The record is unclear concerning the standards [the expert] employed in his evaluation, and, as noted, we cannot assume the correct standards were utilized when no evidence supports that assumption. [The expert] did not have the benefit of the guidelines set forth in Lott for purposes of an Atkins claim. Though the 1969 and 1995 reports are relevant to defendant's `psychological, cognitive and behavioral characteristics', they were not procured and developed as evidence going to the ultimate issue presented by his Atkins claim: whether defendant is so impaired that his execution would constitute cruel and unusual punishment." Id. at ¶ 46.
 {¶ 28} Moreover, it is commonly recognized, with respect to measures of adaptive behavior, that "there will usually be no adaptive behavior test on record prior to the offense. For this reason, it is important for experts conducting Atkins evaluations to obtain information relating to the defendant's adaptive skills before the offense occurred and prior to incarceration to augment whatever recent information is provided byinformants. Lawyers should make every effort to locate as many records as possible from schools, employers, providers, and government agencies so that evaluations of adaptive behavior take into account informationfrom all available sources." Bonnie Gustafson, Allen Chair Symposium: The Role of the Death Penalty in America: Reflections, Perceptions, and Reform: Article: The Challenge of Implementing Atkins v. Virginia: How Legislators and Courts Can Provide Accurate Assessments and *Page 11 
Adjudications of Mental Retardation in Death Penalty Cases (May, 2007), 41 U. Rich. L.Rev. 811, 848-849. (Emphasis added.)
 {¶ 29} Contrary to appellant's assertion, other courts have taken into consideration post-trial evidence, including institutional mental health records or testimony of prison personnel when reviewing a post-conviction Atkins claim. See e.g., State v. Williams,165 Ohio App.3d 594, 2006-Ohio-616; State v. White, 9th Dist. No. 22591,2005-Ohio-6990 (post-trial IQ test results upheld); State v.O'Neal, 1st Dist. No. C-050840, 2006-Ohio-6283 (psychologist relied on IQ test results, evaluations, medical, school, work and prison records);State v. Gumm, 169 Ohio App.3d 650, 2006-Ohio-6451, at ¶ 21 (state presented testimony of death-row corrections officer and case manager in an attempt to show that he had no limitations in adaptive functioning);State v. Burke, 10th Dist. No. 04AP-1234, 2005-Ohio-7020, at ¶ 36
(expert took into account writings defendant made while in prison);Jackson v. Alabama, 963 So.2d 150, 156 (court considered testimony of corrections officer regarding defendant's adaptive behavior).
 {¶ 30} In Williams, for instance, the trial court, in dismissing the defendant's petition, considered three IQ test results and a recent expert report in which the expert concluded that defendant was not mentally retarded. The trial court also considered the defendant's institutional records and correspondence by the defendant while in prison. Although we found that the defendant's correspondence was unauthenticated and not part of the record pursuant to Civ.R. 56(C), we did not reject the use of the post-trial evidence per se. By inference, it was understood that recent test results and even properly authenticated prison records could be considered in reviewing anAtkins claim. *Page 12 
 {¶ 31} We agree with the state's position that a trial court must consider all relevant evidence rather than looking solely at that evidence regarding the defendant's mental capacity at the time of the offense. As the state so aptly points out: "In the interest of fairness to both the State and the offender, an examination of the offender's past and present mental status would serve the interest of justice, not the interest of one capital offender * * *." Obviously, because there must be an early onset of mental retardation before age eighteen, testimony from family members, teachers, and introduction of school records and psychological evaluations from this time period is germane to this issue. However, this should not foreclose consideration of all relevant evidence, regardless of whether it consists of post-trial records or evaluations. Appellant should not be able to selectively choose which documents, from which time frame, the court should consider.
 {¶ 32} Thus, it is evident that in some circumstances it will be necessary to examine the current mental condition of the defendant to determine whether he is mentally retarded. Where, as here, the evidence from the mitigation hearing was not presented or developed to prove mental retardation, appellant will need to undergo current psychological evaluations that test his intellectual functioning and adaptive limitations. Because his institutional mental health records may contain relevant information and shed some light on whether he demonstrates limitations in two or more adaptive skills, this information should not remain sealed because it may assist experts in making the determination of whether he is mentally retarded. We find that the trial court did not abuse its discretion in ordering these records to be unsealed or in considering post-trial evidence. *Page 13 
 {¶ 33} Nor did appellant establish that his due process or equal protection rights were violated. Due process involves the right to notice, a hearing and an opportunity to be heard before a tribunal.State v. Gledhill (1984), 13 Ohio App.3d 372, 373. All three of these requirements were satisfied when the court allowed counsel for both sides to brief and argue their positions in open court. As for equal protection "said constitutional guarantee means that no person or class of persons shall be denied the same protection of the law which is enjoyed by other persons or other classes in the same place and under like circumstances." Id., citing Roth v. Public Employees RetirementBd. (1975), 44 Ohio App.2d 155. Appellant has failed to show how he has been denied equal protection.
 {¶ 34} We overrule appellant's first and second assignments of error.
 {¶ 35} In his third assignment of error, appellant argues that the trial court's decision to have three separate experts review twenty years of post-sentence incarceration records and to opine on his "present mental condition" asks more of him than required underAtkins. He also says that it impedes his right to proceed underLott with a full adjudication of his Atkins claim.
 {¶ 36} We reject these arguments. The trial court's decision does not place any more onerous burden on appellant than is required by theLott decision. The trial court has merely afforded counsel's experts the ability to review all relevant evidence to make their determination of whether he is mentally retarded. In Lorraine I, appellant asked for experts to be appointed. Now, he wishes to limit by time period the evidence these experts can consider. We do not believe it is an abuse of discretion for the trial court to permit the experts to review the institutional mental health records and to rely on any *Page 14 
additional information that is relevant to the ultimate determination of whether he is mentally retarded.
 {¶ 37} Appellant's third assignment of error is overruled.
 {¶ 38} The judgment of the Trumbull County Court of Common Pleas is affirmed.
COLLEEN MARY O'TOOLE, J., concurs in judgment only.
ROBERT A. NADER, J., Ret., Eleventh Appellate District, sitting by assignment, concurs.
[1] We note that unlike an Atkins claim, a competency challenge requires the trial court to look at the "defendant's present mentalcondition" to determine whether the defendant is "incapable of understanding the nature and objective of the proceedings * * *." R.C. 2945.37(G). (Emphasis added.) *Page 1